Paul E. CHARCZUK and Victoria
Charczuk, Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Appellee.

No. 83–2370.

United States Court of Appeals,
Tenth Circuit.

Aug. 29, 1985.

Thomas J. Carley, Rockville Centre, N.Y., for appellants.

Thomas A. Gick, Tax Div., Dept. of Justice (Glenn L. Archer, Jr., Asst. Atty. Gen. and Michael L. Paup, and Gary R. Allen, Tax Div., Dept. of Justice, with him on brief), Washington, D.C., for appellee.

Before HOLLOWAY and SEYMOUR, Circuit Judges, and BOHANON, Senior District Judge.[*]

BOHANON, District Judge.

Paul E. Charczuk and Victoria Charczuk jointly filed a Form 1040 for the taxable year 1977 reflecting income of $4,763.00. This amount was entered on the line for "business income" rather than on the line for "wages, salaries, tips and other employee compensation." Attached to the taxpayers' return were seven Form W–2 Wage and Tax Statements showing that the taxpayers received wages during 1977 totaling $12,276.00. Also attached was a Schedule C for each taxpayer claiming a "net profit" of $2,668.00 for Paul Charczuk and $2,095.00 for Victoria Charczuk.[1] On June 9, 1980, the Commissioner sent taxpayers a notice of deficiency informing them that

---

[*] Honorable Luther Bohanon, Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

1. Each Schedule C (entitled Profit or (Loss) from Business or Profession (Sole Proprietorship) ) gave the taxpayers' name, address, social security number and the amount claimed as "net profit." To the right of the area for deduc-

tions on both schedules was the instruction "See Form–21." A "Form–21" was attached for Paul Charczuk which detailed various "subtractions" for taxes, rent, subsistence, interest, auto, telephone, utilities, supplies, dues and subscriptions from "receipts" of $6,676.00. No "Form–21" or similar explanation of calculations was attached for Victoria Charczuk.

they owed $1,148.00 in taxes for 1977 based on disallowance of all expenses claimed on Schedule C for lack of verification. Subsequently, the taxpayers petitioned the Tax Court for a redetermination of the deficiency. In those proceedings the taxpayers did not attempt to challenge the Commissioner's determination by presenting evidence in support of their claimed deductions, but rather argued that the income tax itself was invalid as a matter of law. The Tax Court granted summary judgment in favor of the Commissioner. T.C. Memo. 1983–433. Taxpayers appeal from this judgment claiming the Tax Court misconstrued their arguments against the income tax and that its decision was contrary to law and "illogical." We affirm.

 The issues taxpayers press on appeal are, stated in their own words, as follows:

1. Whether there is any Constitutional authority granted to Congress to impose an income tax on the individuals who are appellants herein for the year 1977, and if such authority is claimed to exist, what precise words of the Constitution are claimed as authority to impose an income tax on appellants for the year 1977?

2. Whether there is any law or statute imposing an income tax on appellants for the year 1977 and, if such a law or statute is claimed to exist, what is the precise citation of such law or statute?

3. Whether the word "income," as used in taxing statutes, is unconstitutionally vague and indefinite and, if it is claimed not to be unconstitutionally vague and indefinite:

a. What is the precise definition of "income" for income tax purposes?; and

b. Precisely how is "income" measured for income tax purposes?

It takes little consideration to determine that the arguments presented by taxpayers with respect to these issues are meritless and unreasonable. However, to forestall taxpayers' patently false claim that "[t]he issues in this case have never been ad-dressed and answered by any Federal Article III Court" we will quote at length from the opinion of the United States Court of Appeals for the Second Circuit in *Ficalora v. Commissioner of Internal Revenue*, 751 F.2d 85 (1984), *cert. denied* —— U.S. ——, 105 S.Ct. 1869, 85 L.Ed.2d 162 (1985), which involved taxpayers who were represented by the same Thomas J. Carley who represents the taxpayers in the instant appeal. The quoted text which follows reveals that the Second Circuit in *Ficalora* was responding to arguments substantially identical to those taxpayers advance in this case.

## I. Constitutional Authority to Impose An Income Tax on Individuals

We first address ourselves to the appellant's contention that neither the United States Congress nor the United States Tax Court possess the constitutional authority to impose on him an income tax for the taxable year 1980. Appellant argues that an income tax is a "direct" tax and that Congress does not possess the constitutional authority to impose a "direct" tax on him, since such a tax has not been apportioned among the several States of the Union. In support of his argument, appellant cites Article I, Section 9, clause 4 of the United States Constitution which provides that:

"No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken."

He also relies on the case of *Pollock v. Farmer's Loan and Trust Co.*, 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (initial decision), 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108 (decision on rehearing) (1895), wherein the United States Supreme Court held that a tax upon income from real and personal property is invalid in the absence of apportionment.

In making his argument that Congress lacks constitutional authority to impose a tax on wages without apportionment among the States, the appellant has chosen to ignore the precise holding of the Court in *Pollock*, as well as the development of constitutional law in this area

over the last ninety years. While ruling that a tax upon income from real and personal property is invalid in the absence of apportionment, the Supreme Court explicitly stated that taxes on income from one's employment are not direct taxes and are not subject to the necessity of apportionment. *Pollock v. Farmer's Loan and Trust Co.*, 158 U.S. at 635, 15 S.Ct. at 919. Furthermore, the Sixteenth Amendment to the United States Constitution, enacted in 1913, provides that:

"The Congress shall have the power to lay and collect taxes on income, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

Finally, in the case of *New York, ex rel. Cohn v. Graves*, 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 666 (1937), the Supreme Court in effect overruled *Pollock*, and in so doing rendered the Sixteenth Amendment unnecessary, when it sustained New York's income tax on income derived from real property in New Jersey. *Id.* at 314–15, 57 S.Ct. at 468–69. Hence, *there is no question* but that Congress has the constitutional authority to impose an income tax upon the appellant.

## II. Statutory Authority to Impose an Income Tax on Individuals and Definition of Taxable Income

The appellant contends that "[n]owhere in any of the Statutes of the United States is there any section of law making any individual liable to pay a tax or excise on 'taxable income.' " ... The essence of the appellant's argument is that 26 U.S.C. § 1 does not impose a tax on any individual for any stated period of time; rather, it imposes a tax on an undefined: "taxable income".

Section 1 of the Internal Revenue Code of 1954 (26 U.S.C.) (hereinafter the Code) provides *in plain, clear and precise language* that "[t]here is hereby imposed on the taxable income of every individual ... a tax determined in accordance with" tables set-out later in the statute. In equally *clear language*, Section 63 of the Code defines taxable income as "gross income, minus the deductions allowed by this chapter ...", gross income, in turn, is defined in Section 61 of the Code as "all income from whatever source derived, including (but not limited to) ...: (1) Compensation for services ...". Despite the *appellant's attempted contorted construction of the statutory scheme*, we find that it coherently and forthrightly imposes upon the appellant a tax upon his income for the year 1980.

. . . . .

### III. "Income"

Lastly, the appellant asserts that the term "income", as used in the taxing statutes, has no defined meaning and is unconstitutionally vague and indefinite. As discussed above, Section 61 of the Code defines gross income as "all income from whatever source derived". Even if we were to assume, *arguendo*, that this phrase is somehow vague or indefinite, Section 61 of the Code specifically cites "[c]ompensation for services ..." as a concrete example of what is meant by the term income. The wages which the appellant received for his services rendered to [his employer] in taxable year 1980, fall squarely within the definition of income contained in Section 61(a)(1) of the Code. The appellant's argument that the term "income", as used in the Code, is unconstitutionally vague and indefinite, *is totally without merit.*

*Id.* 751 F.2d at 87–88 (emphasis added).

*Ficalora* was decided on December 13, 1984. Thus some six months before oral argument in this case, taxpayers, through their counsel, knew that the arguments they raise in this case had in fact been considered in detail by an Article III court and, further, that that court had rejected these arguments as clearly lacking merit.

*Ficalora*, however, was not the first time an Article III court had rejected as without merit these same contentions argued by this same Thomas J. Carley. *Lively v. Commissioner of Internal Revenue*, 705 F.2d 1017 (8th Cir.1983) involved taxpayers

who had used precisely the same tactic used by the Charczuks to understate their taxable income in this case. The following portion of the Eighth Circuit's brief opinion is quite relevant to the instant case:

> The taxpayers argue further that the income tax is unconstitutional because it is a direct tax which is not apportioned, that there is no law imposing an income tax on them for 1977, ... that income cannot be defined or measured, and that an individual's "gross receipts" cannot be taxed. These arguments are wholly without merit.
>
> This appeal is frivolous. Pursuant to Rule 38 of the Federal Rules of Appellate Procedure, we impose on the appellants double the costs of the Commissioner.

*Id.* at 1018. When Carley importuned for a rehearing in *Lively*, the court responded to him personally with great clarity:

> the court finds that the petition for rehearing is frivolous. Therefore, in accordance with 8th Cir.R. 16(e), counsel is deemed to have multiplied the proceedings in the case and to have increased costs unreasonably and vexatiously in the sum of $250. Counsel is directed to pay $250 personally to the opposing party.

*Lively*, No. 83–1070 (8th Cir. Jun. 8, 1983) (order denying petition for rehearing and rehearing en banc). The *Lively* opinion and order on rehearing were handed down more than four months before Carley noticed the appeal on behalf of the Charczuks in the instant case.

Although it is not an Article III court, we also find the following comments of the Tax Court in *Manley v. Commissioner of Internal Revenue*, 46 T.C.M. (CCH) 1359, 1361 (1983), another case in which taxpayers who attempted to claim their wages as business income were represented by Carley, to be particularly relevant:

> In the instant case, petitioners and their counsel could not have had any reasonable expectation of receiving a favorable decision in this proceeding. Nevertheless, their counsel conducted himself in

such a manner as to precipitate an inordinate amount of wasted time and effort on the part of the Court, even for a tax protester case. Accordingly, we find that the proceedings in this case were instituted merely for delay and consider the following language previously adopted by this Court particularly apropos to the instant case:

> When the costs incurred by this Court and respondent are taken into consideration, the maximum damages authorized by the statute ($500) do not begin to indemnify the United States for the expenses which petitioner's frivolous action has occasioned. Considering the waste of limited judicial and administrative resources caused by petitioner's action, even the maximum damages authorized by Congress are wholly inadequate to compensate the United States and its other taxpayers. These costs must eventually be borne by all of the citizens who honestly and fairly participate in our tax collection system. * * * (*Sydnes v. Commissioner*, [74 T.C. 864, 872–873 (1980), *affd.* 647 F.2d 813 (8th Cir. 1981)].)

The memorandum opinion of the Tax Court in *Manley* was filed on September 12, 1983, several months after Carley was sanctioned by the *Lively* court and more than a month before the present appeal was taken.

■ At oral argument in the present matter, Carley was asked about *Lively* and whether it did not answer his arguments completely. In response Carley claimed to have learned so much since *Lively* that he practically possessed a new revelation about the issues involved. We disagree. It is obvious that despite having full knowledge of the learned opinions of two different Article III courts and the accurate reasoning of the Tax Court in *Manley* concerning his arguments, Carley has failed to learn that he has no right to occupy the time of such courts with frivolous, unreasonable and vexatious proceedings, and

that if he does so, he exposes not only his clients but also himself personally to sanctions.

Fortunately, we are not limited by the $500 maximum placed on the *Manley* court's ability to sanction by the version of 26 U.S.C. § 6673 then in force. (Even the Tax Court can now award up to $5,000 damages in this type of case pursuant to Congress' amendment of § 6673 by Pub.L. 97–248 § 292(b), 96 Stat. 574 (Sept. 3, 1982).) We have noted that "[c]ourts have the inherent power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings." *Clark v. Commissioner of Internal Revenue*, 744 F.2d 1447 (10th Cir.1984) *citing Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980); *see also In Re Baker*, 744 F.2d 1438, 1441 (10th Cir.1984) (*en banc*). Further authority for this court to impose sanctions on the Charczuks can be found in 28 U.S.C. § 1912 (1982) and Federal Rule of Appellate Procedure 38 which permit single or double costs and "just damages" to a prevailing appellee. This court may also impose damages under 26 U.S.C. § 7482(c)(4) (1982) "in any case where the decision of the Tax Court is affirmed and it appears that the notice of appeal was filed merely for delay." *See Clark v. Commissioner*, 744 F.2d at 1448. Mr. Carley may be personally assessed an amount determined in accordance with 28 U.S.C. § 1927 (1982) which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so [sic] multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[2]

Mr. Carley's theory of argument in this case, as well as the other cases referenced supra, appears to be based on a belief that it is acceptable conduct for an attorney to repeatedly claim that basic matters of common understanding are in fact meaningless and incomprehensible.[3] This belief is mistaken.

Courts are in no way obligated to tolerate arguments that thoroughly defy common sense. Such conduct is permissible in our society for the very young, those attempting to make a joke or, occasionally,

---

**2.** See *Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1357 n. 7 (10th Cir.1985) and *Glass v. Pfeffer*, 657 F.2d 252, 257 n. 4 (10th Cir.1981) for discussions of the effect of Congress' amendment of § 1927 in 1980 in response to the Supreme Court's holding in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 757–63, 100 S.Ct. 2455, 2459–62, 65 L.Ed.2d 488 (1980).

**3.** The preposterous and nearly silly character of the arguments advanced on behalf of the taxpayers in this case is well illustrated by the following statement made in a brief filed in the Tax Court below to resist a reasonable stipulation of facts proposed by the government:

> Petitioners will no more concede there is any such thing or concept as "income from wages" than they will concede there is any such thing or concept as "income from depreciation" or "depreciation income"; all such characterizations are rejected as meaningless and an attempt to cloud the minds of intelligent and not-so-intelligent individuals.

Record on Appeal at 68. The arguments on appeal have been equally ludicrous as exemplified in this passage from appellants' brief in chief:

> Income is not a real live human being—it is merely a concept or attempted concept. As a concept or attempted concept, it is an undefined concept. No Congress has ever defined "income". No Article III Federal Court has ever defined "income" or the concept "income". As a concept, "income" is undefined and for our purposes and all practical and other purposes, does not exist.
>
> Nowhere in any of the Statutes of the United States is there any section of law making any individual liable to pay a tax on "income" or "taxable income". If there were such a statute, that statute would violate the Constitution and protections it affords individuals in Art. I, Sec. 2, cl. 3 and Art. I, Sec. 9, cl. 4 …

Appellants' brief at 8, 9. Needless to say, the Internal Revenue Code obviously makes individuals liable to pay taxes on their taxable income, and Article III Federal Courts have in fact defined "income." *See e.g. Eisner v. Macomber*, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1920).

philosophers, but it cannot be allowed of one engaged in the serious work of a practicing attorney appearing before a court of law. Mr. Carley's conduct in this suit has been a paradigm of unreasonable behavior, and it has been exceedingly vexatious as that term is understood by the Supreme Court. *See Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). (In a case arising under Title VII of the Civil Rights Act of 1964, the Court stipulated that "the term 'vexatious' in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him."). Given the continued character of Mr. Carley's intransigence, justice requires that he and his clients bear the full weight of the sanctions allowed by law so that the government, and ultimately all law abiding taxpayers, will not be taxed with the expense of opposing meritless contentions such as his.

Accordingly, the decision of the Tax Court is affirmed and Paul E. Charczuk and Victoria Charczuk are ordered to pay the government double its costs on appeal. In addition, the government is ordered to submit within twenty (20) days to the court clerk, and to Thomas J. Carley, an appropriate accounting of all expenses (other than costs of the appeal) and attorneys' fees it has reasonably incurred as a result of this appeal. Thomas J. Carley may file with the court clerk a challenge to the government's accounting within ten (10) days of the government's filing *only with regard to whether the expenses and fees were in fact incurred on this appeal.* Upon approval of the government's accounting or any part of it by the court, Thomas J. Carley will be ordered to personally pay to the government the entire amount approved.[4]

---

4. Courts imposing sanctions on an attorney under § 1927 must "afford the attorney all appropriate protections of due process available under the law." House Conf.Rep. No. 96–1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S. Code Cong. & Ad.News 2716, 2781, 2783. At

oral argument in this case, Mr. Carley was offered an opportunity to explain why sanctions should not be imposed against him personally. This satisfies any right he may have had to a hearing on the matter. *Cf. McConnell v. Critchlow,* 661 F.2d 116, 119 (9th Cir.1981).