In the Matter of Lanceford C. BJELLA, Court Reporter.

LaDora McPETERS, etc., et al., Plaintiffs-Appellees, Cross-Appellants,

v.

SKY'S WEST PARACHUTE CENTER, INC., etc., et al., Defendants-Appellants, Cross-Appellees.

Nos. 85–1519, 85–1565 and 85–1702.

United States Court of Appeals, Tenth Circuit.

Nov. 26, 1986.

---

James C. Bull and Marc Salzberg, of Bucholtz, Bull & Ewing, P.C., Denver, Colo., for Court Reporter Bjella.

Before HOLLOWAY, Chief Judge, and BARRETT, MCKAY, LOGAN, SEYMOUR,

MOORE, ANDERSON, TACHA, and BAL-DOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Lanceford Bjella, a court reporter employed by the federal district court of Colorado, requests en banc reconsideration of an order imposing sanctions upon him for his failure to timely file transcripts in the captioned case. A panel of this court ordered Bjella to file the transcripts forthwith, to refund to counsel the amount initially deposited in connection with preparing the transcripts, and to abandon any attempt to collect additional payment. Bjella asserts that the sanctions are contrary to law, and improper under the facts. We disagree and affirm.

The circumstances giving rise to the sanctions are as follows. The transcripts were ordered by appellants' counsel on April 11, 1985. Under Fed.R.App.P. 11, the transcripts were due thirty days later on May 11. Nonetheless, Bjella estimated that they would not be completed until July 17, 1985. The transcripts were not filed as of that date, and on July 18 the circuit court clerk sent a letter to the trial judge, with a copy to Bjella and appellants' counsel, notifying the court that the transcripts were not filed and directing the imposition of sanctions. Bjella did not respond. On July 22, the circuit clerk sent Bjella a letter reminding him that the transcripts were due and his extension of time for filing had expired, and asking Bjella to notify the court if he needed another extension. Bjella did not respond. On August 5, 1985, the clerk again notified Bjella of the overdue transcripts and directed him to file them forthwith. Bjella again did not respond.

On September 27, 1985, the circuit clerk sent the Colorado district court clerk a letter, with a copy to Bjella, listing all of Bjella's overdue transcripts and establishing priorities for their preparation and filing. The deadline filing date for the instant transcripts was November 5, 1985. The letter stated that Bjella would be required to show cause for any missed deadline and that the deadline dates did not affect sanctions already levied or provided for. Bjella did not meet the deadline and did not respond.

On June 3, 1986, upon direction of a panel of this court, the circuit clerk entered an order instructing Bjella to file the transcripts by July 3, 1986, or show cause prior to that date why he could not do so. Upon receipt of this order, counsel for appellant sent a letter to the clerk dated June 7, with a copy to Bjella, stating that counsel had been informed by Bjella that the transcripts had been finished in April 1986, but that Bjella would not file them until he received $997 in addition to the $3000 deposit paid when the transcripts were ordered. The attorney stated that he was reluctant to pay Bjella any additional sum until he knew whether the court was going to impose the indicated sanctions against Bjella because sanctions would reduce or eliminate the need to make further payment. The attorney requested guidance from the court. On June 30, 1986, Bjella filed a response to the order in which he confirmed that the transcripts had been completed April 9, and that he would not file the transcripts until he received the additional amount. Bjella offered no explanation for his failure to meet the earlier filing dates and did not refer to the sanctions the circuit clerk had repeatedly indicated were to be imposed.

On July 22, 1986, after considering Bjella's response to the June 3 order, a panel of this court issued the order that is the subject of Bjella's request for en banc reconsideration. This order directed Bjella to file the transcripts forthwith. It further directed that, because the applicable sanctions exceeded any transcript payment claimed by Bjella, he was to refund to counsel the $3000 deposit and to collect no further amount. On July 23, 1986, Bjella informed the Colorado district court clerk that he had filed the transcripts, but asserted that he did not acknowledge the right of either the court of appeals or the district court to impose sanctions. He subsequently filed the motion now before us request-

ing reconsideration, a stay, or in the alternative, waiver of sanctions.

We find no merit to Bjella's contention that sanctions may not be imposed as a matter of law. The duties of federal court reporters are governed by 28 U.S.C. § 753 (1982). *See Hydramotive Manufacturing Corp. v. SEC*, 355 F.2d 179, 180 (10th Cir. 1966). The statute requires:

"Upon the request of any party to any proceeding which has been so recorded who has agreed to pay the fee therefor ... the reporter ... shall promptly transcribe the original records of the requested parts of the proceedings and attach to the transcript his official certificate, and deliver the same to the party ... making the request.

"The reporter ... shall promptly deliver to the clerk for the records of the court a certified copy of any transcript so made."

28 U.S.C. § 753(b). The statute further provides that "[t]he reporters shall be subject to the supervision of the appointing court and the Judicial Conference in the performance of their duties, including dealings with parties requesting transcripts," *id.* § 753(c), and that "[e]ach reporter may charge and collect fees for transcripts requested by the parties, including the United States, at rates prescribed by the court subject to the approval of the Judicial Conference," *id.* § 753(f).

In 1982, in accordance with its statutory authority, the Judicial Conference approved a recommendation by the Committee on Court Administration

"that the judicial council require each district court, subject to such exceptions as may be granted by the circuit council, to develop a court reporter management plan that will provide for the day-to-day management and supervision of an efficient court reporting service within the court. Each plan is to provide for the supervision of court reporters in their relations with litigants as specified in the Court Reporter Act, including fees charged for transcripts, adherence to transcript format prescriptions and deliv-

ery schedules. The plan must also provide that supervision be exercised by the clerk of court, district court executive, judge or *other person designated by the court....*"

Report of the Proceedings of the Judicial Conference of the United States 8 (1982) (emphasis added). The Report suggested sanctions for late transcripts, but specifically stated that its sanction provision should not "be considered the only penalty that could be imposed by the court or circuit council on habitual offenders." *Id.* at 10. The Report also provided that "the reduction in the fee may be waived by the clerk of the court of appeals for good cause shown." *Id.*

As directed by the Judicial Conference, the Judicial Council of the Tenth Circuit, composed of circuit and district court judges pursuant to 28 U.S.C. § 332 (1982), adopted a Model Plan for Management of Court Reporting Services on October 19, 1982. In so doing, the Council specified that court reporter management plans submitted by the district courts for Council approval should conform as closely as possible to the Model Plan. Accordingly, the district court judges of Colorado unanimously adopted a Court Reporter Management Plan on December 20, 1982 (the Plan), which was filed of record on that date and approved by the Tenth Circuit Judicial Council on February 3, 1983. The Plan states:

"The charge assessable to the ordering party for any transcript which is not delivered within thirty days of the date on which it is ordered, or within an extension of that period obtained in advance from the Court of Appeals, shall be reduced in accordance with sanctions established by the Judicial Council of the Tenth Circuit Court of Appeals. These financial sanctions provide for a one percent reduction of the total bill for each three full days' delay, and are waivable by the Tenth Circuit Court of Appeals only upon a showing of unusual or extreme circumstances."

Court Reporter Management Plan (D.Colo. filed Dec. 20, 1982). We point out that reduction of transcript charges for late filing is mandatory under the Plan in the absence of a request for waiver supported by the requisite showing.

■ Transmission of the record on appeal must be done pursuant to Fed.R. App.P. 11, under which a court reporter who cannot complete a transcript within thirty days of receipt of the request must seek an extension of time from the clerk of the court of appeals. Rule 11 states that "[i]n the event of the failure of the reporter to file the transcript within the time allowed, the clerk of the court of appeals shall notify the district judge and take such other steps as may be directed by the court of appeals."

The sanctions here were imposed in accordance with the Plan and Rule 11. The transcripts at issue were ordered on April 11, 1985. At that time Bjella estimated that the transcripts would be completed July 17, 1985. Because this date exceeded the thirty-day period mandated by Rule 11, the circuit court clerk treated the estimated date as a request for an extension of time and specifically stated that the grant of the extension was without waiver of sanctions under the Plan. Upon Bjella's failure to file the transcripts by July 17, his failure to request additional time, and his failure to offer any explanation to excuse the tardiness, the circuit court clerk notified the district judge and Bjella on July 18, 1985, that sanctions would be imposed as of May 11, 1985, the date upon which the transcripts were due.

■ Bjella contends that the Plan improperly delegates to the court of appeals the supervisory power over court reporters granted by statute to the district court. We disagree. As set forth above, section 753 provides that court reporters are subject to supervision by both the district court and the Judicial Conference. Thus the Colorado Plan, enacted in accordance with the Judicial Conference Report, is in essence an exercise of the joint supervisory power vested by section 753 in the district court and the Judicial Conference. *See, e.g., In re Peterson*, 494 F.2d 746 (9th Cir.1974) (court of appeals ordered court reporter to refund part of cost of transcripts for failure to comply with Judicial Conference guidelines). In addition, Rule 11 specifically authorizes the court of appeals to direct "other steps" in the event a transcript is not timely filed by the reporter. Finally, this court has inherent power to impose sanctions in order to control its docket and promote judicial efficiency. *Cf. Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980); *Charczuk v. Commissioner*, 771 F.2d 471, 475 (10th Cir.1985); *Snead v. Commissioner*, 733 F.2d 719, 720 (10th Cir.1984), *modified on other grounds*, 744 F.2d 1448 (10th Cir.1984).

Bjella also attacks the Plan's provision that sanctions may be waived only upon a showing of unusual or extreme circumstances. Bjella contends that this language is at odds with the good cause standard of the Judicial Conference Report, and improperly vests unfettered discretion in the circuit court. We disagree.

■ We begin by observing that Bjella may well be estopped to challenge the waiver provision by his failure to invoke it in a timely manner. Despite repeated notice that the transcripts were long overdue and that sanctions would therefore be imposed, Bjella did not answer directives to show cause until June 30, 1986, over a year after the transcripts should have been filed. Although Bjella then explained why he had not filed the material upon completion in April 1986, he did not offer any explanation for his failure to complete the transcripts in May 1985, when they were due, or to meet other deadlines set by the circuit clerk. Moreover, given the repeated prior warnings that sanctions would be imposed under the Plan as of May 11, 1985, Bjella's assertion on June 30, 1986, that he was entitled to withhold filing until payment of the full cost is preposterous. Not until his brief in support of en banc reconsideration did Bjella state, without further elaboration, that his tardiness was due to a

backlog caused in part by illness, increased workload, and conversion to computer-assisted reporting. This is simply too little, too late.

◼ In any event, Bjella's complaints regarding the waiver provision are without merit. There is no significant distinction between a showing of good cause and a showing of unusual or extreme circumstances. We likewise reject out of hand Bjella's argument that the unusual or extreme circumstances standard does not provide adequate guidance to this court in imposing sanctions.

◼ Bjella further contends that the sanction is improper because he did not receive adequate prior notice. This argument is frivolous. The Plan establishing sanctions was filed of record on December 20, 1982. Bjella first received notice of his delinquency on July 18, 1985, the day after the due date Bjella himself had set. This notice specifically stated that sanctions would be imposed as of May 11, 1985. Bjella's assertion that he should have had a prior hearing is equally incredible. Bjella did not respond to repeated notices to file the transcripts or to show cause. His post hoc invocation of the right to a hearing is unavailing given his failure to request one at the appropriate time, or to offer any timely explanation that would have required a hearing to develop facts. Bjella's silence under these circumstances can only be viewed as a waiver of any hearing right he may have had.

◼ The above discussion clearly indicates our rationale for rejecting Bjella's contention that, as a factual matter, sanctions should not have been imposed. When Bjella finally answered repeated instructions to show cause, he stated only that he had refused to file because appellate counsel had not paid him the balance of the cost of the transcripts. This reason was groundless in view of Bjella's knowledge that sanctions reducing or eliminating his right to payment were applicable. Moreover, counsel's failure to pay the difference between the estimated cost and the actual cost provides "no justification for holding the appellate process hostage." *Murphy v. L & J Press Corp.*, 577 F.2d 27, 30 (8th Cir.1978). Although Bjella complains that the sanction order did not consider his backlog, he had not bothered to inform the court at that time that his backlog was the cause for his delinquency. Finally, notwithstanding Bjella's belated explanation to the en banc court, he has yet to offer any reason for his failure to request extensions of time as required by Rule 11 and the Plan.

Bjella also complains that the sanction order does not indicate the date from which the fee reduction would be measured. However, attached to the order is the letter of July 18, 1985, which he had already received, stating that sanctions would be imposed as of May 11, 1985.

In sum, we find no reason to disturb the earlier determination that sanctions are appropriate. Indeed, the only unusual or extreme circumstance here is Bjella's intransigence despite an obligation to act imposed by statute, Rule 11, the Plan, and this court. Accordingly, the order imposing sanctions is affirmed.