FILED
United States Court of Appeals
Tenth Circuit

June 10, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLES RAYMOND WHEELER,

        Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

        Respondent-Appellee.

No. 07-9001

---

**APPEAL FROM THE UNITED STATES TAX COURT**
**(T.C. Nos. 14430-03 & 07206-04)**

---

Submitted on the briefs:[*]

Charles Raymond Wheeler, Pro Se.

Richard T. Morrison, Acting Assistant Attorney General, Richard Farber, Attorney, Teresa T. Milton, Attorney, Tax Division, Department of Justice, Washington, D.C., for Respondent-Appellee.

---

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**BALDOCK**, Circuit Judge.

Petitioner-appellant Charles Wheeler, proceeding pro se, appeals from two decisions of the United States Tax Court. The first decision, in case number 14430-03, decided that there was a total deficiency in income tax due of $113,049 for tax years 1994 through 2000. The court also imposed an addition to Mr. Wheeler's tax of $18,696.75 under 26 U.S.C. § 6651(a)(1) for failing to file tax returns for those years and an addition of $3,620.51 for that period under 26 U.S.C. § 6654 for underpayment of an estimated tax.[1] The second decision, in case number 07206-04, decided there was a deficiency in income tax due of $2,336 for tax year 2001. The court also imposed additions to Mr. Wheeler's tax of $389.50 under § 6651(a)(1) and of $58.83 under § 6654 for that tax year. Finally, the Tax Court assessed a $1,500 penalty in each case under 26 U.S.C. § 6673(a) for instituting proceedings primarily for the purpose of delay and for advancing frivolous and groundless arguments. Mr. Wheeler's appeal from these two Tax Court decisions is also related to appeal No. 07-9005. *See Wheeler v. Comm'r*, 521 F.3d 1289 (10th Cir. 2008). In that appeal Mr. Wheeler contested a Tax Court decision imposing a $3,854 deficiency for a single tax year, 2003, plus an addition to tax and a penalty for that year.

---

[1] The actual phrase used in §§ 6651 and 6654 for these penalties is "[a]ddition to the tax."

In the appeal at hand, Mr. Wheeler argues that: (1) the Commissioner violated his right to procedural due process by not providing him with the statute or statutes upon which the deficiencies at issue are based; (2) the requirement that he sign his 1040 forms under penalty of perjury violates his Fifth Amendment right against self-incrimination; (3) the joint stipulations of fact are void because he agreed to them under duress; (4) evidence was improperly entered into the administrative record; and (5) the penalties assessed against him were improper because the 1040 forms he eventually provided did not possess a valid control number from the Office of Management and Budget (OMB).

The Commissioner has responded to Mr. Wheeler's appeal, and also moves for sanctions in the lump-sum amount of $8,000 on the ground that Mr. Wheeler's appeal is frivolous. Exercising our jurisdiction under 26 U.S.C. § 7482(a)(1), we affirm the decisions of the Tax Court and award a sanction in the amount of $4,000 to the Commissioner.[2]

I.

"We review Tax Court decisions in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." *Scanlon White, Inc. v. Comm'r*, 472 F.3d 1173, 1174 (10th Cir. 2006) (quotations omitted). In his first point, Mr. Wheeler argues that the Commissioner violated

_____

[2] We agree with the parties that Mr. Wheeler's notice of appeal was timely filed.

-3-

his right to procedural due process by not providing him with the statute or statutes upon which the deficiencies at issue are based. He argues that he has never been informed of the statutory authority for the taxes imposed upon him.

A review of the record shows that this is simply the latest version of a broader argument challenging the statutory power of the government to tax income. The very first section of the Internal Revenue Code, 26 U.S.C. § 1, imposes an income tax on the taxable income of every citizen or resident of the United States. *See* 26 U.S.C. § 1; 26 C.F.R. § 1.1-1(a)(1). "Taxable income" is gross income minus allowable deductions, 26 U.S.C. § 63(a), and "gross income" is "all income from whatever source derived," *id*. § 61(a). We have held that an argument that "no statutory authority exists for imposing an income tax on individuals" is "completely lacking in legal merit and patently frivolous." *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990); *see also Charczuk v. Comm'r*, 771 F.2d 471, 472 (10th Cir. 1985) (holding that the argument that there is no law or statute that imposed an income tax on taxpayer was "meritless and unreasonable"). Although on appeal Mr. Wheeler attempts to persuade the court that he would have willingly paid his taxes if someone had simply directed him to the proper sections of the tax code, a review of the proceedings below shows that Mr. Wheeler is well aware of the relevant tax code provisions but believes they are not applicable to him.

In Case No. 14430-03, Mr. Wheeler argued in a December 1, 2003, reply to the Commissioner's answer to his petition that he disagreed that the Commissioner "has statutory authority through public law to determine the petitioner liable for deficiencies in income tax." R. (14430-03), Doc. 4 at 1. He went on to claim that "[t]he Commissioner . . . erred by relying on Title 26 rather than the underlying Statutes at Large." *Id.*

In his April 30, 2004, petition in Case No. 07206-04, Mr. Wheeler argued that neither the Commissioner nor the Tax Court could "produce a Statute at Large that makes the Petitioner liable for the tax the Commissioner . . . is attempting to assess." R. (07206-04), Doc. 1 at 1. He went on to argue that "Title 26 is a non-positive law and is, therefore, a special United States Code that applies to a specified segment of the population of the United States of America." *Id.* at 2.

At a Tax Court hearing on various pre-trial motions filed in both cases, Mr. Wheeler argued

> Well, Your Honor, I'm not very argumentative, and I just asked a simple question. "What's the taxing statute? What's the implementation regulation and what taxable activity have I been involved in?
>
> I don't dispute income tax at all. What I'm questioning is what makes my compensation for labor taxable? People refuse to answer that.

R. (07206-04), Doc. 20 at 17. The Tax Court answered:

-5-

> Well, Mr. Wheeler, I'm not sure specifically what sort
> of an answer you seek. There are numerous cases that have been
> decided . . . that have clearly indicated that . . . gross income
> includes income from whatever source derived, unless it's
> specifically excluded in the Code.
>
> And the Sixteenth Amendment has clearly been found to be a
> valid amendment that permits what we know of as the Internal
> Revenue Code, Title 26.

*Id.* at 17-18. The Tax Court went on to state:

> I'm bound by the courts above me, and those courts have already
> found that the Internal Revenue Code is a valid enactment of the
> Congress, and that it does apply to U.S. citizens who have an
> increase in their net worth, that have received an accretion of income
> as defined, very broadly, [to be] any increase, unless you can show a
> code section that specifically excludes it.

*Id.* at 18-19.

At the trial before the Tax Court, Mr. Wheeler again claimed that he had

never been directed to a specific taxing statute. He argued "[t]he answer that it's

an income tax is a little too broad and a little too general." *Id.*, Doc. 21 at 38.

In its Tax Court Memorandum, the court noted that Mr. Wheeler had

represented in correspondence to the IRS that "he had been researching tax issues

for almost fourteen years." *Id.*, Doc. 26 at 5. In its decision, the Court referenced

the fact that 26 U.S.C. § 1 imposes a federal tax on the taxable income of every

individual and that "[g]ross income for the purposes of calculating taxable income

is defined as 'all income from whatever source derived.'" *Id.* at 8 (quoting 26

U.S.C. § 61(a)).

Mr. Wheeler thereafter filed what was essentially a motion to reconsider which, among other things, argued without citation to authority the deficiency notice that he had received failed to reference the taxing statute authorizing income tax, and that this failure rendered the notice void on its face, deprived the Tax Court of subject matter jurisdiction, and deprived him of his due process rights. R. (04-072006), Doc. 27 at 2-6. Mr. Wheeler had not raised these arguments previously.

Mr. Wheeler also filed an objection to the Commissioner's submitted computation. In his objection he claimed that he had been denied due process in a multitude of ways. Among other things, he claimed, without authority, that the notice of deficiency and the Commissioner's post-opinion computation failed to provide proper notice because they did not reference the specific statute under which the income tax was being assessed. Despite the fact that the Tax Court's opinion had referenced 26 U.S.C. §§ 1 and 61, Mr. Wheeler also claimed that the Commissioner and the Tax Court failed to inform him of any statutory basis for the tax assessed against him, that the only information that he had ever been provided was that he owed an "income tax," and that no sections of Title 26 had been cited by either the Tax Court or the Commissioner. The Tax Court thereafter entered its decisions in both cases.

On appeal, Mr. Wheeler continues to profess ignorance as to the contents of the Tax Code. Changing course from his earlier correspondence and filings, he

claims that he "does not question the right of [the Government] to tax the citizens of the United States" and is only "request[ing the Government] to notify him as to why he is being taxed, by citing the statute(s) under which he owes the tax." Aplt. Opening Br. at 8.[3]  Even following the Commissioner's response brief, wherein the Commissioner cites to numerous statutory cites relevant to Mr. Wheeler's case, including 26 U.S.C. §§ 1 and 61, Mr. Wheeler claims that "[d]espite 14 years of requests on the part of the Appellant, however inarticulate these requests may have been, the Appellee has not once provided Appellant with the . . . notice he has continually requested." Aplt. Reply Br. at 3.

From the above, it is clear that Mr. Wheeler is well aware, and has always been aware, of the provisions of the tax code and the statutes the Commissioner relied on to assess income tax against him.  In fact, in the same correspondence referenced by the Tax Court, wherein Mr. Wheeler claimed that he had researched tax law for almost fourteen years, Mr. Wheeler made numerous arguments as to why the provisions of the tax code should not apply to his income.  In making his arguments, he referenced numerous sections from the code and their accompanying regulations, including 26 U.S.C. § 1 and 26 C.F.R. § 1.1-1.

---

[3]     We note that he also states in his response to the government's motion for sanctions that "[i]t has never been, nor [is it] currently, the stance of the Appellant that there is no authority for imposing a tax." Resp. at 3.  He does say in his opening brief, however, that "[t]he only reason Appellant can see for which Appellee refuses to provide a statute under which a tax was assessed to Appellant is the fact that there is no predicate statute." Aplt. Opening Br. at 8.

*See* R. (14430-03), Ex. 23-J at 8.  Mr. Wheeler's present argument that he has not received due process because he has never been informed of the statutory authority for this country's income tax was not raised until after the Tax Court had issued its opinion, and is frivolous in that it is grounded on a complete misrepresentation of the record.

## II.

In his second point, Mr. Wheeler argues that the requirement that he sign his 1040 forms under penalty of perjury violates his Fifth Amendment right against self-incrimination.  Mr. Wheeler failed to properly raise this argument before the Tax Court and we will not address it for the first time on appeal. *Adolph Coors Co. v. Comm'r*, 519 F.2d 1280, 1283-84 (10th Cir. 1975).  But even if we were to address the merits, the claim is frivolous.  *See United States v. Stillhammer*, 706 F.2d 1072, 1076 (10th Cir. 1983) ("The Fifth Amendment does not serve as a defense for failing to make any tax return . . . .").

## III.

In both 14430-03 and 07206-04, Mr. Wheeler and the Commissioner executed joint stipulations as to certain facts.  In his third claim on appeal, Mr. Wheeler makes the frivolous argument that he was under duress from the Commissioner and the Tax Court when he signed the stipulations.  Although he made no claim of duress to the Tax Court, he now argues "that the spectre of sanctions hung close over [his] head" and that "[t]he [Commissioner's] version of

'Shock an[d] Awe[']' is a constant barrage of inference, veiled threats of sanctions, [and] the response that every issue raised by [Mr. Wheeler] is 'frivolous[.]'" Aplt. Br. at 14-15. He argues that he felt forced to sign the stipulations despite his strong disagreement to their validity because he felt he would be sanctioned if he did not sign them.

"Under the traditional doctrine of duress [in a contract setting], courts often speak of an alleged victim of duress as having been deprived of free will or free agency, or of having acted involuntarily as the result of some imminent and wrongful or unlawful act or threat." 28 Richard A. Lord, Williston on Contracts § 71:11 (4th ed. 2007). Under Tax Court Rule 91(a)(1):

> The parties are required to stipulate, to the fullest extent to which complete or qualified agreement can or fairly should be reached, all matters not privileged which are relevant to the pending case, regardless of whether such matters involve fact or opinion or the application of law to fact. Included in matters required to be stipulated are all facts, all documents and papers or contents or aspects thereof, and all evidence which fairly should not be in dispute.

The Tax Court judge reminded Mr. Wheeler during the Tax Court proceedings that he could be sanctioned for raising frivolous arguments, as he eventually was. Further, at a motions hearing, in setting a trial date, the Tax Court cautioned the parties that it intended to enforce Rule 91. The judge stated:

> Now, you don't have to stipulate to things that aren't true, but if something is not reasonably in dispute, and you refuse to stipulate to it, then, when somebody tries to introduce it here in court, I'm going

-10-

> to want to know why it wasn't stipulated to and why the rule hasn't been violated.

R. (14430-03), Vol. II, Doc. 25 at 22. Clearly, the Tax Court merely instructed Mr. Wheeler, a pro se litigant, that he would be expected to follow tax law and the procedural rules of the Tax Court. Far from an imposition of duress, the Tax Court's warnings appear to be an attempt to prevent a pro se litigant from inadvertently violating the court's procedural rules. *Cf. Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (holding that pro se parties must "follow the same rules of procedure that govern other litigants").

Further, none of the stipulated facts appear to be reasonably disputable, including, for example, the fact that Mr. Wheeler did not timely file returns for the years in question and the amounts that Mr. Wheeler received as compensation for labor for those years. But a thorough review is hindered by the fact that Mr. Wheeler makes no attempt to specify as to which of the stipulated facts he disagrees.

## IV.

In his fourth point, Mr. Wheeler argues that the evidence presented in the Tax Court was not properly authenticated. This point is patently frivolous. Mr. Wheeler does not specify to which pieces of evidence he is referring. Mr. Wheeler did not object to the admission of any of the evidence in the Tax

Court. Furthermore, the parties' stipulation of facts stated that all exhibits referred to in the stipulation and attached to it were authentic.

V.

In the heading of his final point, Mr. Wheeler argues that the penalties assessed against him were improper because the 1040 forms he completed (1) were requests for information subject to the Paperwork Reduction Action (PRA), which was originally enacted in 1980 and then recodified and reenacted in 1995, and (2) failed to possess a valid control number from the Office of Management and Budget (OMB).

Specifically, Mr. Wheeler directs us to 44 U.S.C. § 3512, which reads:

> (a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if–
>
> > (1) the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or
> >
> > (2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.
>
> (b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

The 1040 forms referenced by Mr. Wheeler all display OMB control numbers on their faces. In his opening brief, Mr. Wheeler does not specify exactly what it is

about the OMB control numbers that he alleges is invalid, although he makes reference to a requirement that a "current OMB control number" be displayed. *See* Aplt. Opening Br. at 20. If, as the government theorizes, Mr. Wheeler is complaining of the absence of expiration dates with the OMB control numbers, we are bound by our decisions in *United States v. Collins*, 920 F.2d 619, 630-32 (10th Cir. 1990), and *Lewis v. Commissioner of Internal Revenue*, 523 F.3d 1272, 1276-77 (10th Cir. 2008), which held that expiration dates are not required on 1040 forms.

Since Mr. Wheeler is proceeding pro se, we read his brief liberally. Doing so, we conclude that he is also attempting to argue not only that the 1040 forms at issue did not display valid control numbers, but that the forms themselves were required to also "inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number." § 3512(a)(2); *see also* § 3506(c)(1)(B)(iii)(V). This information is instead contained in the instruction booklet to the 1040 form. The 1040 form then directs the taxpayer to the booklet as the location of the Paperwork Reduction Act notice. Mr. Wheeler apparently contends that this is inadequate.[4]

---

[4] Mr. Wheeler's fifth point also contains a number of other assertions that do not rise to the level of reasoned argument. If they were intended to be separate points of error, they are denied. For example, Mr. Wheeler asserts that "[s]ince 1996, the IRS has purposefully referred to the PRA of 1980, instead of the PRA

(continued...)

We rejected precisely this argument in our recent holding in *Lewis*.  In that opinion we explained that the PRA does not require each *form* requesting information to inform the person responding to the request that he or she is not required to respond unless a valid control number is displayed.  The requirement

---

[4](...continued)
of 1995, in all its publications and statements." Aplt. Opening Br. at 21.  He makes this and other similar statements without explaining how, even if true, this course of action has any relevance to his argument regarding the alleged failure of the 1040 forms to contain a valid OMB control number or a § 3512(a)(2) notification.

Mr. Wheeler also makes an unintelligible claim regarding improper burden-shifting and then goes on to assert that the penalties and interest assessed against him "should not be allowed," Aplt. Opening Br. at 24, because the Tax Court did not properly address his claim that the 1040 forms lacked a valid OMB control number.  He even includes a subsection heading to this effect.  First, there is no argument supporting these claims and the argument following the subsection heading in question argues only that the 1040 form and the IRS are subject to the PRA and that § 3512(a)(2) provides a defense that may be raised at any time.

Second, Mr. Wheeler's brief contains no reference to where this argument was presented to the Tax Court.  The government asserts that this claim was not raised in the Tax Court.  Our independent review of the record reveals only three summary and conclusory sentence-long claims that either the 1040 form or the IRS in general failed to comply with the PRA, which failed to identify a particular section, and were contained in the motion for reconsideration and computation objection referenced earlier, both of which were filed after the Tax Court hearing had been held and the memo containing the reasoning behind the court's decision had been filed.  Further, this claim is not included in the Tax Court memo's recitation of the issues raised by Mr. Wheeler.  Further still, none of the claims in the motions to reconsider were supported by citation to legal authority.

Finally, in his reply brief Mr. Wheeler references the requirements for information collections set forth in § 3506(c)(1)(B).  Mr. Wheeler, however, does not explain how that section is related to his claim that penalties against him are disallowed by § 3512, which itself makes no reference to § 3506.

-14-

is simply that the *agency* must provide that information. We held that "[t]he IRS, an agency, satisfies this obligation by making these disclosures in the instruction booklet associated with Form 1040." *Lewis*, 523 F.3d at 1277.[5]

## VI.

The Commissioner has filed a motion asking that Mr. Wheeler be sanctioned $8,000 for filing a frivolous appeal. "An appeal may be frivolous if it consists of irrelevant and illogical arguments based on factual misrepresentations and false premises, or when the result is obvious, or the appellant's arguments of error are wholly without merit." *Id.* at 1277-78 (citations and quotations omitted). Under Federal Rule of Appellate Procedure 38: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and a reasonable opportunity to respond, award just damages and single or double costs to the appellee." Under 28 U.S.C. § 1912: "Where a judgment is affirmed by the Supreme Court or a court of appeals, the

---

[5] In his briefs, Mr. Wheeler briefly references an unpublished opinion of this court, *Pond v. Commissioner*, 211 F. App'x 749 (10th Cir. 2007), in arguing that we held therein that an argument cannot be called frivolous without consideration of two questions: (1) whether the 1040 form displayed a valid OMB control number, and (2) whether the 1040 form displayed "the notice required under 44 U.S.C. § 3506(c)(1)(B)(iii)." Aplt. Opening Br. at 22. First, as we noted in *Lewis*, unpublished decisions are of no precedential value. *See* 523 F.3d at 1275 n.5. Second, *Pond* "declined to address the argument that the [1040] form violated the PRA because the defendant had not included any of the forms in the record" and "even affirmed the district court's dismissal of the PRA claims as frivolous." *Id.* Third, *Pond* contains *no* reference to § 3506.

-15-

court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs." Under 26 U.S.C. § 7482:

> The United States Court of Appeals . . . shall have the power to require the taxpayer to pay to the United States a penalty in any case where the decision of the Tax Court is affirmed and it appears that the appeal was instituted or maintained primarily for delay or that the taxpayer's position in the appeal is frivolous or groundless.

Finally, in addition to the powers bestowed by the above authorities: "This court has the inherent power to impose sanctions to regulate the docket, promote judicial efficiency and to deter frivolous filings." *Casper v. Comm'r*, 805 F.2d 902, 906 (10th Cir. 1986). Thus, when a frivolous appeal has been filed we have the power to award "just damages" and single or double costs under Rule 38 or § 1912, award a "penalty" under 26 U.S.C. § 7482, or sanction Mr. Wheeler under our inherent power.

In his motion, the Commissioner asks for a lump-sum sanction of $8,000, arguing that "[a]ccording to the records of the Tax Division of the Department of Justice, the average expense in attorney salaries and other costs incurred by the office in the defense of frivolous taxpayer appeals in which sanctions were awarded during 2004 and 2005 was more than $11,000." Mot. for Sanctions at 9. The Commissioner has also assured this court that "[i]n making this computation, we have eliminated from consideration instances in which significantly greater amounts of attorney time were devoted to the case than are typically reported for such cases." *Id*. at 9 n.2. The Commissioner argues that "[t]his Court typically

-16-

imposes a lump sum amount as a sanction under Fed. R. App. P. 38, in lieu of requesting the Government to undertake a specific computation of costs in attorneys' fees on a case-by-case basis." *Id*. at 8.

We agree that a sanction or penalty is appropriate in this case due to the frivolous nature of Mr. Wheeler's appeal. For at least the past twenty years, awarding a lump-sum sanction in frivolous tax appeals has been our general practice. *See Lamb v. Comm'r*, 744 F.2d 1448 (10th Cir. 1984) (per curiam). In *Lamb*, we withdrew the mandates in a number of cases in which we had previously directed the Tax Court to assess attorney's fees and double costs for the bringing of frivolous appeals. In those cases the government had filed motions to reconsider suggesting that there was some doubt that the Tax Court had the necessary jurisdiction to make the appropriate factual findings and award the attorney's fees and costs. Without deciding the jurisdictional issue, this court modified the mandates to award a lump-sum award of $500 and double costs.

Two years later, in *Casper*, we recognized our past practice of giving a $500 lump-sum award and double costs instead of remanding to the Tax Court for a determination as to "actual attorney fees." 805 F.2d at 906. We then held the following:

> On appeal, the Commissioner informs us that the average amount of direct costs associated with defending legally frivolous appeals exceeds $1,400. We now choose to adopt a rule awarding a flat fee of $1,500 as a sanction for a frivolous appeal from a Tax Court decision.

*Id.* We held

> The award will (1) provide an effective sanction for the bringing of a frivolous appeal, (2) serve as an effective deterrent to the bringing of future frivolous appeals, and (3) recompense the government for at least the direct costs of the appeal. Although there is some lack of precision in awarding a flat amount in a frivolous appeal from Tax Court, that has been past practice in this court and we believe it is justified to reduce the flow of paper and expenditure of time incident to the awarding of sanctions.

*Id.* at 906-07. Although *Casper* appeared to adopt at least a presumptive lump-sum sanction amount of $1,500 for a frivolous tax appeal, this court, in an *en banc* footnote in the companion case to this one, recently clarified that such sanction awards are to be determined on a case-by-case basis. *See Wheeler*, 521 F.3d at 1291 n.1 ("All active circuit judges agree that to the extent *Casper . . .* purports to require a $1,500 sanction for a frivolous appeal from a Tax Court decision, it is overruled.").[6]

---

[6] This is a departure from the practice in the Seventh Circuit on which our holding in *Casper* was based. In *Casper*, we cited to *Coleman v. Commissioner*, 791 F.2d 68, 73 (7th Cir. 1986), a case in which the Seventh Circuit recognized that its "usual practice ha[d] been to invite the government to submit an itemized request for attorneys' fees" but noted that "[t]he keeping of time and expense records, and the preparation of affidavits supporting requests for fees, are themselves avoidable costs of baseless litigation." *Id.* at 72. The Seventh Circuit noted that "[i]n order to make simpler the task of computing and awarding fees, courts sometimes impose uniform sanctions on the authority of Fed. R. App. P. 38," and recognized that in its previous cases, it had also "occasionally named a penalty rather than requesting an individual computation of fees." *Id.* The Seventh Circuit therefore decided to award double costs and to "impose sanctions of $1,500 in lieu of attorneys fees." *Id.* at 73.

For the next ten years, the Seventh Circuit routinely gave $1,500 as a

(continued...)

-18-

In *Kyler v. Everson*, we granted the government's motion for an $8,000 sanction for a frivolous appeal from a Tax Court decision, in a case where "[a]t every stage of the proceedings, [the pro se appellant] ha[d] accused government officials and court officers of criminal misconduct." 442 F.3d 1251, 1253-54 (10th Cir. 2006). In doing so, we placed special emphasis on the duty of "all litigants [to] demonstrate a level of civility in pleadings and proceedings that displays a basic understanding of and respect for the courts and the rule of law in this nation." *Id*. at 1254.

Most recently, in the companion case to this one, another panel of this court also found similar arguments put forth by Mr. Wheeler to be frivolous but denied

---

[6](...continued)
sanction in frivolous tax appeals "rather than requiring the Service to tailor its request to the particulars of the individual case." *Cohn v. Comm'r*, 101 F.3d 486 (7th Cir. 1996). In *Cohn*, however, the Seventh Circuit raised its presumptive sanction award to $2,000, holding:

> Of course, the cost of these frivolous cases to the courts, and to the government, which must defend them, may not have risen as much–or may have risen by more. But the aim is not precision, which would cost more than it would be worth. It is rough justice. $2,000 it shall be, at least until we are asked to increase it further–or to decrease it, should an appellant show that this figure is too high. The appellant in this case made no attempt to do so. The government's motion to impose a $2,000 sanction is therefore granted and, for the reasons explained in the accompanying order, the appeal is dismissed.

*Id*. The Seventh Circuit has since raised its presumptive sanction for a frivolous tax appeal to $4,000, an amount that it doubles for a recidivist litigator. *See Szopa v. United States*, 460 F.3d 884, 887 (7th Cir. 2006).

a request for an $8,000 lump-sum sanction on the ground that adequate factual support had not been presented for such a request. *See Wheeler*, 521 F.3d at 1292.

Although this case involves a number of more tax years than the other *Wheeler* case, the Commissioner, as noted above, requests the same $8,000 sanction on the basis of a claimed $11,000 average appeal cost.

Providing a measure of recovery to the government of its damages in having to defend frivolous appeals is an important consideration when awarding a lump-sum sanction in cases of this type. But a bald assertion that the expense incurred in the defense of an average frivolous taxpayer appeal is over $11,000, coupled with an equally bald assurance that this computation does not include cases that required "significantly greater amounts of attorney time" than average, Mot. for Sanctions at 9 n.2, is of little persuasive value when no information is provided as to how this average-cost figure was reached. Even if a more persuasive average-cost figure had been provided, this court, of course, must still exercise its own discretion in setting the sanction, considering, among other factors, whether the present case is more or less difficult than the average frivolous tax appeal that passes before us and whether the appellant is a serial litigator.

In response to the denial of sanctions in No. 07-9005, the government has supplemented its motion for sanctions in this case, positing that the average time

-20-

spent on a frivolous tax appeal is 89 hours, and arguing that such an appeal often requires considerable time simply reviewing an often extensive procedural history and deciphering what arguments are being presented, even if those arguments are ultimately frivolous.

The government also provides this court a declaration of the Tax Division employee in charge of the Tax Division's budget and financial management program, declaring that the hourly attorney fee of the two government attorneys who worked on this particular appeal was $154.99, and that together they spent 86.5 hours responding to this frivolous appeal. As to the presentation of proof regarding the specific attorney's fees in this case, we would note that the Commissioner does not seek to recover its actual attorney's fees and that this court does not engage in the factual findings that such a specific award would require. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986) (holding that courts of appeals do not engage in fact-finding); *Hoyt v. Robson Cos.*, 11 F.3d 983, 985 (10th Cir. 1993) ("[A]n application for appeal-related attorneys' fees must first be made to our court. Should we decide that it is appropriate to award such fees, we may then remand to the district court to determine an award of reasonable fees.").

VII.

The judgment of the Tax Court is AFFIRMED.  The Commissioner's motion for sanctions is GRANTED and a lump-sum sanction of $4,000 is awarded.