The **CLARION CORPORATION**,
Plaintiff-Appellant,

v.

**AMERICAN HOME PRODUCTS COR-
PORATION** and **Lehman Brothers**,
Defendants-Appellees.

Nos. 73–1418, 73–1419.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 22, 1974.

Decided April 2, 1974.

As Amended on Denial of Rehearing
and Rehearing En Banc
May 17, 1974.

Paul J. Klein, Chicago, Ill., for plaintiff-appellant.

Bryson P. Burnham, Lionel G. Gross, William R. Jentes, Chicago, Ill., for defendants-appellees.

Before KILEY, Senior Circuit Judge, SPRECHER, Circuit Judge, and JAMESON,* Senior District Judge.

SPRECHER, Circuit Judge.

This appeal represents a *pro se* attempt to relitigate matters which have become final either through failure to appeal in timely fashion or through a prior concluded appeal.

The Clarion Corporation brought an action against American Home Products Corporation and Lehman Brothers on March 21, 1967 for a "finder's fee" of $980,000 alleged to be due as a result of its activities in bringing together the principals of American Home and Ekco Products Company, culminating in the merger of Ekco into American Home on November 5, 1965. Count I of the complaint alleged an oral agreement of March 20, 1965 for ½ of 1% (which was alleged to be $980,000) of the gross consideration paid for the acquisition of Ekco. Count II alleged that the reasonable compensation for services requested and rendered was $980,000. Count III sought $980,000 from Lehman Brothers for allegedly inducing the breach of the oral contract alleged in Count I.

American Home in its answer admitted that Clarion had performed some services in connection with bringing Ekco and American Home together and that American Home had assumed responsibility for paying whatever finder's fee might be due.

American Home pleaded as one affirmative defense that Clarion had agreed in a writing addressed to Ekco and signed by Clarion's president and sole shareholder, Paul J. Klein, on August 5, 1962, "that in the event a merger of your company is actually consummated with American Home Products Corporation, we are willing to accept $100,000.00 in settlement of our fee." The writing concluded with "we would naturally appreciate your good offices should the circumstances be amenable to further reviewing the amount of the fee." On or about October 1, 1965, American Home sent Clarion its check for $100,000, which it held but did not cash.

Extensive despositions were taken, written interrogatories were exchanged and discovery generally proceeded apace. Discovery indicated that the 1962 attempts to consummate the merger had failed and that the attempts were revived in 1964; that Clarion's claim rested upon oral discussions between Arthur Keating, Chairman of the Board of Ekco, and Klein; that the merger was completed on November 5, 1965; that Lehman Brothers received on or about September 30, 1965 a fee of $916,064; that Arthur Keating died in 1967; and that at some time in 1965 consideration had been given by American Home to offering Clarion $200,000 for its services and if such an offer was formally or informally made to Klein, he had rejected it.

On January 30, 1970, Clarion was given leave to file an amended complaint, which repeated Counts I, II and III, but added Count IV, charging a conspiracy among officials of American Home, Ekco and Lehman Brothers to pay a $916,064 fee to Lehman and to refuse to pay Clarion the reasonable value of its services. The basis for the adding of Count IV was the fact that discrepancies

* Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

had apparently been discovered as to whether the Lehman fee was payment for its services in the American Home-Ekco merger or was in fact payment in whole or substantial part for other unrelated services performed for Ekco. A discovery dispute also centered around Lehman's contention that finders' fees were customarily 10 to 15% of investment bankers' fees (which presumably would make a finder's fee of $100,000 reasonable). In view of the written agreement of 1962 establishing Clarion's fee at $100,000 and Lehman's contention that $100,000 was reasonable, the probability of Clarion's succeeding under Counts I and II was highly speculative and undoubtedly motivated the adding of Count IV.

The case was set for trial on April 8, 1970. Literally on the eve of trial (the day and night of April 7) the parties agreed to a settlement of fourteen annual payments of $35,000 each, or a total amount of $490,000. Consequently, the case was dismissed on April 8 without prejudice and with the leave of court to reinstate if necessary, pending the completion of complicated settlement documents. On that date, the trial judge placed on the record the fact that by accident he had run into Klein the night before while the judge was taking his evening walk and that Klein had reported the details of the settlement at that time to the judge.

The settlement documents required some ten months to prepare. When they were ready, however, Klein refused to execute them on behalf of Clarion because of a dispute he was having with Clarion's lawyers in regard to attorneys' fees. Upon American Home's motion, the court on February 8, 1971 reinstated the case and dismissed it with prejudice, retaining jurisdiction for the sole purpose of supervising (if requested) the exchange of settlement documents. On February 8, Klein advised the court that "I am prepared to . . . execute the documents" and "I am prepared to close

the documents." He also filed a memorandum with the court which set forth the attorney fee dispute and concluded with "I stand ready . . . to go ahead with Mr. Burnham in closing the settlement agreement." The February 8, 1971 judgment order was not appealed.

On March 16, 1971, the court ordered that the parties exchange executed settlement documents and that defendants deliver the first annual payment of $35,000, the proceeds of which were to be divided $17,707.44 to Clarion's attorneys for fees and the balance to Clarion. At this point, Klein proceeded to act without counsel on behalf of Clarion and appealed the order.

We affirmed the district court in Clarion Corp. v. American Home Products Corp., 464 F.2d 444 (7th Cir. 1972) stating:

"Plaintiff's president has not presented to this court or the District Court any valid reason why the lien imposed upon the first installment of the settlement proceeds should not be enforced. Indeed, the only defense offered by plaintiff in regard to the claim for attorneys' fees is that the case for Clarion against American and Lehman was not handled properly; and yet, as indicated earlier, when the settlement was offered, plaintiff accepted the terms and conditions thereof without objection. Thus, this court has no choice but to affirm the decision of the lower court. Moreover, even if we were free to go back into the original case and scrutinize the conduct of plaintiff's attorneys, we would reach the identical conclusion. However, since plaintiff accepted the settlement without objection or appeal, and because he has appealed only the lower court's decision as to the enforcement of the lien, we must affirm the District Court."

Following remand to the district court, the former Clarion attorneys sought relief pursuant to Rule 70 Fed.

R.Civ.P.[1] and shortly thereafter Klein, still acting without counsel on behalf of Clarion, moved to vacate the February 8, 1971 judgment order to "redress serious inequities." Klein's motion was denied on March 1, 1973. This order was appealed under our No. 73–1418.

On March 5, 1973, the court ordered that (1) Clarion Corporation be divested of all right, title and interest in and to $20,486.21 (the original amount of $17,707.44 plus interest and costs) and that (2) defendants deduct and pay that amount to the attorneys and receive a credit for it against the initial installment of $35,000 owed to Clarion under the settlement. This order was appealed under our No. 73–1419. We were advised at oral argument that checks for the $35,000 installments have been tendered to Clarion each year.

Although it is extremely difficult to determine on what legal basis Klein seeks to continue to litigate the judgment order and the attorneys' lien, apparently the grounds are:[2] (1) in No. 1418, the client's consent to the settlement was given without complete knowledge of the facts; and (2) in No. 1419, the attorneys' lien is conditioned upon the settlement and if one falls so must the other.

Compromises of disputed claims are favored by the courts. Williams v. First National Bank, 216 U.S. 582, 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910). Abraham Lincoln is often quoted in his advice to lawyers:

> "Discourage litigation. Persuade your neighbors to compromise whenever you can. Point out to them how the nominal winner is often a real loser—in fees, expenses and waste of time. As a peacemaker, the lawyer has a superior opportunity of being a good man."[3]

Former Canon 8 of the Canons of Professional Ethics provided that "[w]henever the controversy will admit of fair adjustment, the client should be advised to avoid or to end the litigation." The present Code provides this ethical consideration (EC 7–5):[4]

> "A lawyer as adviser furthers the interest of his client by giving his professional opinion as to what he believes would likely be the ultimate decision of the courts on the matter at hand and by informing his clients of the practical affect of such decision."

On April 2, 1970, as the April 8 trial date neared, Clarion's attorneys furnished Clarion and Klein with an eight-page single-spaced letter reviewing in

---

1. Rule 70 provides: "If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment. The court may also in proper cases adjudge the party in contempt. If real or personal property is within the district, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law. When any order or judgment is for delivery of possession, the party in whose favor it is entered is entitled to a writ of execution or assistance upon application to the clerk."

2. As with most lay persons, Klein explores in infinite detail a host of irrelevant matters but sheds no substantial light on what seems to be the crux of his current opposition to the settlement.

3. American Bar Association, Code of Professional Responsibility and Canons of Judicial Ethics 48 (1969). Cf. Estin v. Estin, 334 U.S. 541, 545, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561 (1948): "[T]here are few areas of the law in black and white. The greys are dominant and even among them the shades are innumerable. For the eternal problem of the law is one of making accommodations between conflicting interests."

4. American Bar Association, Code of Professional Responsibility and Canons of Judicial Ethics 25 (1969).

detail the strength and weakness of Clarion's cause of action: the difficulties of proving an oral contract when the opposing discussant is dead; the battle of experts as to what would be a reasonable fee; the written agreement for $100,000 and the $100,000 tendered check; the jury's possible feeling that "$100,000 is a lot of money;" the credibility factor where Klein's testimony is contradicted by high executives of American Home and Lehman Brothers; the unexpected and unknown factors which may influence a jury; the complications of trial and the difficulties of introducing some of the evidence; the expenses of discovery and trial preparation, and the additional cost of a lengthy trial and possible appeal; the time required to collect any judgment after trial and appeal; the chances of reversal on appeal and the possibility of retrial; and many others. The attorneys concluded that a settlement in the range of $450,000–$490,000 "would represent an excellent settlement in light of the probabilities of what will happen at trial;" that "we do not think the chances are 50–50 that the verdict will be as much as $450,000; in fact my own view is that the chances of a verdict as large as that are about one in five;" and that "you must decide" what to do.

Significantly, the attorneys' letter also pointed out:

"The sole objective of the litigation is to get money for you; it is not to visit some kind of revenge on the defendants, nor is it to make an example of them so that, for fear of further repercussions, they will mend their ways.

". . . [I]t is a major mistake to let extraneous factors—such as 'proving' something to someone—get in the way of a hard-headed, dollars and cents, monetary evaluation of the case."

The Code of Professional Conduct includes these further ethical considerations (EC 7–8):[5]

"In assisting his client to reach a proper decision, it is often desirable for a lawyer to point out those factors which may lead to a decision that is morally just as well as legally permissible. He may emphasize the possibility of harsh consequences that might result from assertion of legally permissible positions."

■ Once the lawyer has fulfilled his obligation to evaluate the situation, the final decision whether to settle or not is for the client alone.

In this case the client (Klein acting as and for Clarion) personally advised the trial judge on the night of April 7, 1970, that the case had been settled for $490,000; ten months later on February 8, 1971, he appeared in open court and at least twice acknowledged that he and Clarion had approved the settlement; and at that time he also filed a written memorandum stating that but for his dispute about the amount of the legal fees he stood ready to close the settlement. As late as with the filing of his brief in this court on June 20, 1973, Klein stated that he "felt there was no other practical alternative but to accept and to use the initial $35,000 settlement proceeds to employ new counsel to investigate what was legally at fault with the handling of the case." In other words, he believed that he could use the settlement proceeds for the purpose of overturning the settlement.

As this court said in Cummins Diesel Michigan, Inc. v. The Falcon, 305 F.2d 721, 723 (7th Cir. 1962):

"Federal and State Courts have held under a great variety of circumstances that a settlement agreement or stipulation voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the Court [citing cases]."

■ The only possible ground on which Klein could upset the voluntarily entered settlement would be that it was procured through fraud. One who relies

5. *Id.*, at 25.

upon fraud, misrepresentation, or concealment must sufficiently allege and prove it. Clark v. Barlow, 74 App.D.C. 328, 122 F.2d 337, 341 (1941). The allegations and proof must be clear and convincing and must show (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth and (8) his right to rely thereon. McCarthy v. Cahill, 249 F.Supp. 194, 196 (D.D.C.1966).

■ Klein has filed a great volume of documents in the district court and here. He has had ample time to ponder what his fancied grievances may be. Aside from generally alleging a conspiracy among the trial judge, all of Clarion's and his former attorneys, and most of the local bar (for failing to represent him in one case where the time to appeal has long since passed and another case where appeal was taken and lost), he has developed nothing to allege any of the elements to show that the settlement was procured by fraud.[6]

We have already in our previous opinion dealt with Klein's unpersuasive complaint that Clarion's case had somehow not been properly handled, 464 F.2d 444, 445–446. Nevertheless, we have carefully read through all of Klein's writings to attempt to fathom his grievances and we have also gone through the entire record in this case to try to determine whether anything he has said has any basis in fact or whether something appears in the record which he has not alluded to but which bears the slightest trace of unfairness to or overreaching of Clarion or Klein. We find nothing of that nature.

The case was diligently and competently handled by all of Clarion's and Klein's former counsel. In view of the voluntary settlement, the trial judge had no opportunity to display any prejudice against Clarion or Klein. The settlement is unquestionably an excellent and remunerative one. His former attorneys advised him that the purpose of litigation is not "revenge" or to "make an example" of defendants.

What finally emerges from documents Klein has filed is the complaint that the strategy of the case was mishandled. If this were so, it would not have any legal effect at this point. But it is manifestly not so. We have read the discovery in the form of the depositions and interrogatories and answers. The strategy was sound and at times exceedingly adept. Klein objects, for example, to the strategy of adding Count IV, but it was probably this count which persuaded the favorable settlement. Klein objects at one time that the cost of discovery was "prohibitively expensive" and then devotes the remainder of his brief to complaints about the failure to "follow through" on further discovery of insignificant details. We found that Klein was personally present at virtually every deposition. He was, far more than the average client, aware of every fact discovered and of every strategy pursued. When he approved of and consented to the settlement, he was fully informed and well-advised.

Klein's course of action since the dismissal of the case on February 8, 1971 (as to No. 73–1418) and since our opinion in 464 F.2d 444 (as to No. 73–1419) has been frivolous and obstructive and has caused a shameful waste of judicial manpower.

■ Rule 38 F.R.A.P. provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."[7] Rule 38 was designed to penalize litigants for just such tactics

---

6. Moreover, under Rule 60(b) Fed.R.Civ.P., a motion to vacate a judgment for fraud must be filed within one year.

7. 28 U.S.C. § 1912 also provides: "Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs."

as these and to compensate those who have been put to the expense of answering such wholly frivolous appeals. Oscar Gruss & Son v. Lumbermen's Mutual Casualty Co., 422. F.2d 1278, 1283–1284 (2d Cir. 1970); N.L.R.B. v. Smith & Wesson, 424 F.2d 1072 (1st Cir. 1970); Fluoro Electric Corp. v. Branford Associates, 489 F.2d 320, 326 (2d Cir. 1973).

■ In assessing a penalty we have taken into account the fact that Klein is a layman but that nevertheless he should have understood that the refusal of many attorneys to represent him was not a conspiracy but instead a recognition of the frivolity of his position.

The judgments in 73–1418 and 73–1419 are affirmed. Pursuant to Rule 38, each appellee is awarded damages against Clarion Corporation in the sum of $2,500 and double costs.

Affirmed.