Norman E. COLEMAN,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Gary HOLDER, Plaintiff-Appellant,

v.

SECRETARY OF the TREASURY and United States of America, Defendants-Appellees.

Nos. 85–1202, 85–1601.

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 17, 1985.

Decided May 7, 1986.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Robert P. Ruwe, Chief Counsel, I.R.S., Washington, D.C., for respondent-appellee.

Before WOOD, FLAUM, and EASTER-BROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Some people believe with great fervor preposterous things that just happen to coincide with their self-interest. "Tax protesters" have convinced themselves that wages are not income, that only gold is money, that the Sixteenth Amendment is unconstitutional, and so on. These beliefs all lead—so tax protesters think—to the elimination of their obligation to pay taxes. The government may not prohibit the holding of these beliefs, but it may penalize people who act on them.

It is an important function of the legal system to induce compliance with rules that a minority firmly believes are misguided. Legal penalties change the balance of self-interest; those who believe taxes wicked or unauthorized must nonetheless pay. When the legal system depends on honest compliance as much as the income tax system does—and when disobedience is potentially rewarding to those affected by the rule—it is often necessary to impose steep penalties on those who refuse to comply. We have consolidated the cases of two such people.

Norman Coleman did not file tax returns for 1979, 1980, or 1981. The Internal Revenue Service reconstructed Coleman's income for these years and concluded that he owed taxes of $4,806 for 1979, $6,454 for 1980, and $3,692 for 1981. The IRS also concluded that Coleman owed additions to tax exceeding $2,300. Coleman sought review in the Tax Court, demanding that the IRS prove the correctness of its computations and arguing, among other things, that wages are not income. Coleman declined to offer any evidence concerning his income; he insisted that the IRS bear the whole burden of production. The Tax Court granted summary judgment to the IRS, concluding that Coleman had presented no evidence that might undermine the presumption that the Commissioner's notice of deficiency is correct. Because Coleman had filed tax returns for the years before 1979 and demonstrated through the briefing an awareness of the legal obligation to file, the court imposed a penalty of $5,000 under 26 U.S.C. § 6673, which authorizes the Tax Court to award damages when it concludes that the case has been "maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless. . . ."

Gary Holder filed a tax return for 1980 but then filed an amended return on which he subtracted his wages from his gross income, leaving only $68.13 in taxable income. Holder attached to the amended return a screed insisting that wages are not income. The amended return requested a refund of $4,555.20. The IRS imposed a $500 penalty under 26 U.S.C. § 6702 for filing a frivolous return. Holder paid 15% of the penalty and filed suit in the district court to recover the payment. 26 U.S.C. § 6703. There he argued not only that wages are untaxable but also that § 6702 is unconstitutional. The district court concluded that the suit is as frivolous as the tax return. It granted summary judgment to the government and ordered Holder to pay the attorneys' fees the government incurred in defending the action.

The billingsgate in appellants' briefs is customary in cases of this nature. Coleman says that wages may not be taxed because they come from his person, a depreciating asset. The personal depreciation offsets the wage, leaving no net income. Coleman thinks that only net income may be taxed under the Sixteenth Amendment—net income as Coleman defines it, rather than as Congress does. Holder, who styles himself a "private citizen," insists that wages may not be taxed because the Sixteenth Amendment authorizes only excise taxes, and in Holder's world excises may be imposed only on "government granted privileges." Because Holder believes that he is exercising no special privileges, he thinks he may not be taxed. These are tired arguments. The code imposes a tax on all income. See 26 U.S.C. § 61. Wages are income, and the tax on wages is constitutional. See, among hundreds of other cases, *United States v. Thomas*, 788 F.2d 1250, 1253 (7th Cir.1986); *Lovell v. United States*, 755 F.2d 517 (7th Cir.1984); *Granzow v. CIR*, 739 F.2d 265, 267 (7th Cir.1984); *United States v. Koliboski*, 732 F.2d 1328, 1329 & n. 1 (7th Cir.1984). See also *Brushaber v. Union Pacific R.R.*, 240 U.S. 1, 12, 24–25, 36 S.Ct. 236, 239, 244–45, 60 L.Ed.2d 493 (1916).

Both Coleman and Holder also argue that the income tax is a taking, which abridges their right to earn income. Taxes indeed "take" income, but this is not the sense in which the constitution uses "takings." Article I, section 8, clause 1 of the constitution grants to Congress "Power To lay and collect Taxes". The power thus long predates the Sixteenth Amendment, which did no more than remove the apportionment requirement of Art. I, sec. 2, cl. 3 from taxes on "incomes, from whatever source derived". Although the government might try to achieve through special taxes what the Takings Clause of the Fifth Amendment forbids if done directly, the general tax levied by the Internal Revenue Code does not offend the Fifth Amendment. *Brushaber, supra.*

Coleman argues that the IRS had to prove the amount of his income; he needed to show nothing. The statute is otherwise. People must make an honest report of their income to the government. If they fail to do this, they must establish any inaccuracies in the Commissioner's reconstruction of their income. 26 U.S.C. § 6020(b). His further argument that the Seventh Amendment requires a jury trial in the Tax Court is empty. Even in ordinary litigation, the Seventh Amendment does not require a jury trial when there are no facts in dispute, and Coleman put none in dispute. The Seventh Amendment at all events does not apply to civil litigation against the United States. *McElrath v. United States,* 102 U.S. (12 Otto) 426, 440, 26 L.Ed. 189 (1880); see also *Atlas Roofing Co. v. OSHRC,* 430 U.S. 442, 450–51, 97 S.Ct. 1261, 1266–67, 51 L.Ed.2d 464 (1977). Our circuit has apparently never held squarely that there is no right to a jury trial in the Tax Court, but other circuits have held this, and we agree with them. E.g., *Parker v. CIR,* 724 F.2d 469, 472 (5th Cir.1984); *Funk v. CIR,* 687 F.2d 264, 266 (8th Cir.1982).

Both appellants challenge the penalties imposed on them, contending that "frivolous" is too vague a designation to support a penalty. This is a staple term of civil litigation, however, and we have sustained against constitutional challenge 28 U.S.C. § 1927, which allows awards against counsel for "vexatious" conduct. *In re TCI, Ltd.,* 769 F.2d 441, 449 (7th Cir.1985). Statutes need not be unambiguous in every application to be constitutional. Many words acquire meaning through judicial and administrative construction over the years, and this evolutionary process is constitutional. E.g., *CSC v. Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); cf. *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975). Courts have been imposing penalties for frivolous litigation for hundreds of years, cf. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980), and the ambiguities that lurk in "frivolous" (or any other word) in marginal cases do not prevent the imposition of penalties. Uncertainty is a fact of legal life. The "law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree." *Nash v. United States,* 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913). "Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the ... law to make him take the risk." *United States v. Wurzbach,* 280 U.S. 396, 399, 50 S.Ct. 167, 169, 74 L.Ed. 508 (1930). See also, e.g., *United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975).

The purpose of 26 U.S.C. §§ 6673 and 6702 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate. A petition to the Tax Court, or a tax return, is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. This is the standard applied under Fed.R. Civ.P. 11 for sanctions in civil litigation, and it is a standard we have used for the award of fees under 28 U.S.C. § 1927 and the award of damages under Fed.R.App.P. 38. See *Indianapolis Colts v. Mayor and City Council of Baltimore,* 775 F.2d 177 (7th Cir.1985); *In re TCI, supra; Lepucki v. Van Wormer,* 765 F.2d 86 (7th Cir.) (attorneys' fees awarded), *cert. denied,* ── U.S. ──, 106 S.Ct. 86, 88 L.Ed.2d 71, *damages awarded,* ── U.S. ──, 106 S.Ct. 403, 88 L.Ed.2d 355 (1985); *Steinle v. Warren,* 765 F.2d 95, 102 (7th Cir.1985) ($2,500 damages awarded); *Oglesby v. RCA Corp.,* 752 F.2d 272, 279–80 (7th Cir.1985). The inquiry is objective. If a person should have known that his position is groundless, a court may and should impose sanctions. See *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir. 1986).

Things are otherwise under §§ 6673 and 6702, the appellants say; these statutes

require not only a lack of objective support but also subjective bad faith. Coleman cites *May v. CIR*, 752 F.2d 1301 (8th Cir. 1985), for this proposition. As originally published *May* used a subjective test, although the court found that May himself acted in subjective bad faith. The court later revised the opinion, stating the inquiry as whether the taxpayer "knew or should have known" that the claim, return, or argument was groundless. 55 A.F.T.R.2d 747, 751 (8th Cir.1985). "Should have known" is an objective test. We used an objective test for penalties under the tax laws in *Lovell v. United States, supra,* and there is no reason to change that approach. Section 6673, for example, states alternative tests: whether the suit was "maintained ... primarily for delay" or whether the position is "frivolous or groundless." The former is a subjective inquiry, the latter is objective; either will support a penalty. See also *In re TCI, supra,* 769 F.2d at 445 (subjective bad faith is important under § 1927 only when the litigation is objectively colorable).

The purpose of §§ 6673 and 6702, like the purpose of Rules 11 and 38 and of § 1927, is to induce litigants to conform their *behavior* to the governing rules regardless of their subjective beliefs. Groundless litigation diverts the time and energies of judges from more serious claims; it imposes needless costs on other litigants. Once the legal system has resolved a claim, judges and lawyers must move on to other things. They cannot endlessly rehear stale arguments. Both appellants say that the penalties stifle their right to petition for redress of grievances. But there is no constitutional right to bring frivolous suits, see *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983). People who wish to express displeasure with taxes must choose other forums, and there are many available. Taxes are onerous, no doubt, and the size of the tax burden gives people reason to hope that they can escape payment. Self-interest calls forth obtuseness. An obtuse belief—even if sincerely held—is no refuge, no warrant for imposing delay on the legal system and costs on one's adversaries. The more costly obtuseness becomes, the less there will be.

■ The contentions in this case are objectively frivolous. They have been raised and rejected so often that this circuit now handles almost all similar cases by unpublished orders. The Tax Court and the IRS were entitled to impose sanctions. We, too, regularly impose sanctions in these cases. In *Van Wormer* this court awarded attorneys' fees as a sanction for similar claims, and the Supreme Court added $1,000 in damages. Our unpublished orders in cases of this sort regularly end with awards of double costs and attorneys' fees in favor of the government. Precisely because the substantive claims are so weak, and the opinions are therefore unpublished, litigants may be unaware of our practice. The routine use of sanctions does not deter unless people know what lies in store. See also, e.g., *Connor v. CIR,* 770 F.2d 17, 20 (2d Cir.1985) (the argument that wages are not income "has been rejected so frequently that the very raising of it justifies the imposition of sanctions.").

Our usual practice has been to invite the government to submit an itemized request for attorneys' fees. The keeping of time and expense records, and the preparation of affidavits supporting requests for fees, are themselves avoidable costs of baseless litigation. The government's brief in No. 85–1601 informs us that the average amount of fees it has been awarded in tax protester litigation between July 26, 1984, and June 12, 1985, is $1,258 per case. This includes only the fees that can be directly attributed to litigation. In order to make simpler the task of computing and awarding fees, courts sometimes impose uniform sanctions on the authority of Fed.R.App.P. 38. The Supreme Court awarded a flat $1,000 in *Van Wormer* on top of the fees we had earlier granted. We, too, have occasionally named a penalty rather than requesting an individual computation of fees. E.g., *Steinle, supra; Ruderer v. Fines,* 614 F.2d 1128, 1132–33 (7th Cir.

1980); and *Clarion Corp. v. American Home Products Corp.*, 494 F.2d 860, 865–66 (7th Cir.), *cert. denied*, 419 U.S. 870, 95 S.Ct. 128, 42 L.Ed.2d 108 (1974), each of which imposes $2,500 as damages for frivolous appeals; and *Hilgeford v. Peoples Bank*, 776 F.2d 176, 179 (7th Cir.1985); and *Wisconsin v. Glick*, 782 F.2d 670 (7th Cir. 1986), each of which imposes a $500 penalty for a frivolous appeal. And compare *Hallowell v. CIR*, 744 F.2d 406, 408 (5th Cir.1984) ($2,000 per tax protest); and *Crain v. CIR*, 737 F.2d 1417, 1418 (5th Cir.1984) (same), with *Knoblauch v. CIR*, 749 F.2d 200, 202–03 (5th Cir.1984) (individual calculation).

Because average awards of actual attorneys' fees in tax protest cases exceed $1,000, we choose to impose sanctions of $1,500 in lieu of attorneys' fees. Even $1,500 cannot cover the indirect costs of this litigation—including the costs that befall serious litigants, who must wait longer for their cases to receive judicial attention. The decision to name a penalty rather than invite proof of the government's actual attorneys' fees produces some imprecision, doubtless. Coleman's case is a little more complex than Holder's—Coleman's brief is 38 pages, the government's 31; Holder's brief is 10 pages, the government's 16. There should be no weeping over this imprecision, however. Coleman and Holder could have avoided the penalty, and other people *should* avoid it, by the most minimal concern for settled rules. They knew or should have known that their claims are frivolous, and they (rather than their adversary) must pay the cost of their self-indulgent litigation.

The judgments are affirmed, with double costs and $1,500 damages in each case.