T.C. Memo. 2003-165



UNITED STATES TAX COURT



JOHN P. TROWBRIDGE, LIFE CENTER HOUSTON BUSINESS TRUST,
JOHN P. TROWBRIDGE, TRUSTEE, AND LIFE CHOICES BUSINESS TRUST,
JOHN P. TROWBRIDGE, TRUSTEE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 750-01.                      Filed June 4, 2003.



        R determined deficiencies in, and additions
to, tax with respect to P John P. Trowbridge
(Dr. Trowbridge) for 1996 and 1997.  As a protective
measure, R also determined deficiencies in, and
additions to, tax with respect to P Life Center Houston
Business Trust (Life Center) for 1996 and 1997 and P
Life Choices Business Trust (Life Choices) for 1997.
Ps filed a petition for redetermination but failed to
appear at trial.  R moved for default judgment against
Dr. Trowbridge with respect to deficiencies in tax for
1996 and 1997 in the amounts of $146,847 and $211,508,
respectively.  R proceeded to trial on the issues of
(1) an additional deficiency in tax (first raised in
R's amendment to answer) with respect to Dr. Trowbridge
for 1996 based on additional gross business receipts
for that year, and (2) the additions to tax asserted
against Dr. Trowbridge for 1996 and 1997.

1. <u>Held</u>:  R's motion for default judgment is granted.

2. <u>Held</u>, <u>further</u>, R is not barred by the statute of limitations on assessment with respect to Dr. Trowbridge's 1996 taxable year.

3. <u>Held</u>, <u>further</u>, there is an additional deficiency in tax with respect to Dr. Trowbridge for 1996 based on gross business receipts of $1,632,140 for that year.

4. <u>Held</u>, <u>further</u>, Dr. Trowbridge is liable for additions to tax under secs. 6651(a)(1) and 6654, I.R.C., with respect to his 1996 and 1997 taxable years.

5. <u>Held</u>, <u>further</u>, Dr. Trowbridge is liable for a penalty under sec. 6673, I.R.C., in the amount of $25,000.

John Parks Trowbridge, pro se.

<u>M. Kathryn Bellis</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  By notice of deficiency dated October 20, 2000 (the notice of deficiency), respondent determined deficiencies in, and additions to, Federal income tax with respect to petitioner John P. Trowbridge (Dr. Trowbridge) as follows:[1]

---

[1] Respondent also asserted additions to tax under sec. 6651(a)(2) in amounts to be determined.  We interpret respondent's posttrial brief as conceding those additions to tax in the event we find that the 1996 and 1997 Forms 1040 received
(continued...)

|  |  | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1996 | $146,847 | $33,041 | $7,816 |
| 1997 | 272,771 | 61,373 | 14,593 |

In a statement attached to the notice of deficiency, respondent explained that business income purportedly earned by petitioner Life Center Houston Business Trust (Life Center) in 1996 and 1997 and by petitioner Life Choices Business Trust (Life Choices) in 1997 is taxable to Dr. Trowbridge on the alternative grounds that (1) Life Center and Life Choices were shams, (2) Life Center and Life Choices were grantor trusts of which Dr. Trowbridge was the owner, or (3) Dr. Trowbridge in fact earned such income and, under the assignment of income doctrine, could not shift the incidence of taxation with respect to such amounts. Solely as a protective measure (i.e., as an alternative position in the event the foregoing arguments proved to be unsuccessful), respondent also determined deficiencies in, and additions to, tax with respect to Life Center for 1996 and 1997 and Life Choices for 1997 and issued notices of deficiency (also dated October 20, 2000) to that effect.[2] Petitioners timely filed a petition for redetermination.

_____

[1](...continued)
by respondent from Dr. Trowbridge in October 1997 and October 1998, respectively, are not valid income tax returns (which we so find).

[2] Because we do not reach respondent's alternative position, we do not set forth the deficiencies and additions to tax determined against Life Center and Life Choices.

Respondent has moved that Dr. Trowbridge be held in default and that a decision be entered that there are deficiencies in tax with respect to him for 1996 and 1997 in the amounts of $146,847 and $211,508,[3] respectively, and that decisions be entered that there are no deficiencies in tax with respect to Life Center and Life Choices.  Respondent has also moved for partial summary judgment in his favor on the issues of (1) whether respondent is barred by the statute of limitations on assessment with respect to Dr. Trowbridge's 1996 taxable year, (2) whether there is an additional deficiency in tax with respect to Dr. Trowbridge for 1996 based on additional gross business receipts for that year, and (3) whether Dr. Trowbridge is liable for additions to tax under sections 6651(a)(1) and 6654.  For the reasons that follow, we shall grant respondent's motion for default judgment and sustain (with minor modifications as to amounts) the positions he has taken in his motion for partial summary judgment.  We shall also impose a penalty on Dr. Trowbridge under section 6673(a)(1).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and

_____

[3] That amount is less than the deficiency in tax for 1997 determined by respondent in the notice of deficiency.  In his motion for default judgment, respondent attributes such downward adjustment to the elimination of transfers among petitioners and other duplicated items.

Procedure.  For the sake of convenience, all dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Dr. Trowbridge and Life Center

Dr. Trowbridge is a physician who has been practicing medicine since at least 1978.  At the time the petition was filed in this case, Dr. Trowbridge resided in Harris County, Texas. Dr. Trowbridge is a calendar year taxpayer.

Life Center is a business trust[4] created by Dr. Trowbridge and a colleague on or around December 6, 1996, pursuant to a document styled "Contract and Declaration of Trust for Life Center Houston" (the trust agreement).  The trust agreement purports to effect the transfer by Dr. Trowbridge of unspecified property to Life Center in exchange for trust certificates evidencing beneficial ownership of Life Center.  Although the trust agreement does not identify any trustees by name, Dr. Trowbridge held himself out as the trustee of Life Center. Before the close of 1996, Dr. Trowbridge obtained an employer identification number for Life Center and opened a bank account in Life Center's name (the Life Center bank account).

---

[4]  For purposes of this report, we assume (without deciding) that Life Center is a legally recognized entity under Texas law.

The Medical Practice

During the years at issue, Dr. Trowbridge provided medical services at 9816 Memorial Blvd., Suite 205, Humble, Texas (the medical practice).  The books and records of the medical practice were maintained under the cash method of accounting.  Prior to December 1996, the medical practice was referred to as "John Parks Trowbridge MD", and receipts from the medical practice were deposited in two bank accounts styled "John Parks Trowbridge MD".  Contemporaneous with the formation of Life Center in December 1996, Dr. Trowbridge began using the name "Life Center Houston" for the medical practice.  On January 8, 1997, cash receipts and checks from the medical practice for the period December 3 through December 31, 1996, were deposited in the Life Center bank account.

Dr. Trowbridge's 1995 Through 1997 Forms 1040

1995 Form 1040[5]

Some time in January 1997, the Internal Revenue Service (IRS) received from Dr. Trowbridge a Form 1040, U.S. Individual Income Tax Return 1995 (1995 Form 1040).  Although Dr. Trowbridge reported tax of $133,977 on that form, he also inserted the following handwritten notation thereon:  "SEE ATTACHED DISCLAIMER STATEMENT--ADMITTED TAX LIABILITY IS ZERO".

---

[5] As discussed infra, Dr. Trowbridge's 1995 Form 1040 is relevant to the determination of whether he is liable for the sec. 6654 addition to tax with respect to his 1996 taxable year.

The attached disclaimer statement (the 1995 disclaimer) reads in part as follows:

> The assessment and payment of income taxes is voluntary * * * I respectfully decline to volunteer concerning assessment and payment of any tax balance due on the return or any redetermination of said tax. Be it known that I, therefore, deny tax liability and do not admit that the stated amount of tax on return, as calculated solely by reference to provided tables, is due and collectible. The tax return read as a whole shows <u>no amount as being the tax</u> and <u>shows the tax to be zero</u> and <u>zero is the starting point in determining a deficiency</u> or any other action involving me. * * *

Initial 1996 Form 1040

Dr. Trowbridge received extensions of time to file his 1996 Federal income tax return to October 15, 1997. On that date, Dr. Trowbridge mailed to the IRS a Form 1040, U.S. Individual Income Tax Return 1996 (initial 1996 Form 1040), which the IRS received on October 20, 1997. Although Dr. Trowbridge reported tax of $36,851 on that form, he also attached a disclaimer statement substantially identical to the 1995 disclaimer. Dr. Trowbridge also deleted the words "of perjury" from the jurat of his initial 1996 Form 1040.[6]

1996 Form 1040X and Revised 1996 Form 1040

On January 28, 2000, the IRS received from Dr. Trowbridge a Form 1040X, Amended Individual Income Tax Return, for 1996 (1996

---

[6] The jurat is the statement above the signature line on the return which reads in relevant part: "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete."

Form 1040X), reporting additional tax of $4,071. Attached as an exhibit to the 1996 Form 1040X is a Form 1040 for 1996 signed by Dr. Trowbridge and dated January 26, 2000 (revised 1996 Form 1040). In terms of computations, the revised 1996 Form 1040 is substantially identical to the initial 1996 Form 1040 (i.e., it does not reflect the changes contained in the 1996 Form 1040X). However, Dr. Trowbridge did not attach a disclaimer statement to the revised 1996 Form 1040, nor did he alter the jurat thereof. The words "under protest/without prejudice" appear directly beneath Dr. Trowbridge's signature on both the 1996 Form 1040X and the revised 1996 Form 1040.

Initial 1997 Form 1040

Dr. Trowbridge received an extension of time to file his 1997 Federal income tax return to August 15, 1998. On October 22, 1998, the IRS received from Dr. Trowbridge a Form 1040, U.S. Individual Income Tax Return 1997 (initial 1997 Form 1040). Although Dr. Trowbridge reported tax of $44,763 on that form, he also wrote the following on page 2 thereof: "SEE ATTACHED DISCLAIMER--ADMITTED TAX LIABILITY IS ZERO PER ATTACHED STATEMENT". In substance, the attached disclaimer statement is identical to the 1995 disclaimer. Dr. Trowbridge also deleted the word "perjury" from the jurat of his initial 1997 Form 1040.

### 1997 Form 1040X and Revised 1997 Form 1040

On January 28, 2000, the IRS received from Dr. Trowbridge a Form 1040X, Amended Individual Income Tax Return, for 1997 (1997 Form 1040X), reporting additional tax of $32,180. Attached as an exhibit to the 1997 Form 1040X is a Form 1040 for 1997 signed by Dr. Trowbridge and dated January 26, 2000 (revised 1997 Form 1040). In terms of computations, the revised 1997 Form 1040 is substantially identical to the initial 1997 Form 1040 (i.e., it does not reflect the changes contained in the 1997 Form 1040X). However, Dr. Trowbridge did not attach a disclaimer statement to the revised 1997 Form 1040, nor did he alter the jurat thereof. The words "under protest/without prejudice" appear directly beneath Dr. Trowbridge's signature on both the 1997 Form 1040X and the revised 1997 Form 1040.

### Dr. Trowbridge's Payments and Credits

The only payments made by Dr. Trowbridge in respect of his 1996 income tax were $100 payments submitted with his initial 1996 Form 1040 in October 1997 and his 1996 Form 1040X in January 2000, respectively. The only payments made by Dr. Trowbridge in respect of his 1997 income tax were $100 payments submitted with his initial 1997 Form 1040 in October 1998 and his 1997 Form 1040X in January 2000, respectively. Dr. Trowbridge did not claim any wage withholding or other credits on his 1996 and 1997 Forms 1040 and 1040X.

The Pleadings

The Petition

Petitioners filed a petition for redetermination on January 16, 2001. We have struck from the petition all assignments of error other than petitioners' assignment relying on the affirmative defense that the period for assessment of taxes for 1996 has expired (petitioners' limitations defense).

Answer and Amendment to Answer

Respondent answered petitioners' one remaining assignment of error by denying that he had erred and averring that, because Dr. Trowbridge's initial 1996 Form 1040 is not a valid return, the statute of limitations does not bar the assessment of tax with respect to Dr. Trowbridge for that year.[7]

Subsequently, we granted respondent leave to amend his answer to allege an increased deficiency in Dr. Trowbridge's 1996 tax attributable to increased gross business receipts for that year (the portion of Dr. Trowbridge's 1996 deficiency in excess of $146,847 is hereafter referred to as the additional 1996 deficiency). Respondent also asserted corresponding increases in the additions to tax asserted against Dr. Trowbridge under sections 6651(a)(1) and 6654. Consistent with the protective notice of deficiency issued to Life Center, respondent asserted

_____

[7] Respondent also alleged that he issued his notice of deficiency to Life Center within the 3-year period of limitations on assessment applicable to Life Center's 1996 taxable year.

in the alternative an increased deficiency in, and increased additions to, Life Center's 1996 tax. Petitioners did not file a reply to respondent's amendment to answer.

Petitioners' Discovery Requests

On September 27 and 28, 2001, petitioners served on respondent a request for admissions, a set of interrogatories, and two requests for production of documents. The request for admissions is 134 pages in length (without attachments) and requests 545 admissions. The set of interrogatories is 124 pages in length and contains 480 interrogatories.

On October 5, 2001, respondent filed a motion for protective order with respect to the request for admissions, interrogatories, and requests for production of documents served by petitioners. Respondent argued that such requests were not timely, addressed improper issues, and were intended to burden respondent unduly, waste his resources, and divert him from trial preparation. We asked petitioners to respond and, after considering their response, granted respondent relief "substantially for the reasons stated in respondent's motion."

Petitioners' Dismissal Efforts

Motion To Dismiss for Lack of Jurisdiction

On November 21, 2001, petitioners submitted a motion styled "Petitioner's Verified Challenge to Jurisdiction of the Court", which we filed as a motion to dismiss for lack of jurisdiction.

The motion "denies the existence of any contracts or commercial agreements which create an attachment of an equity relationship between the 'United States' and/or The State of Texas and Petitioner." The motion also states: "Petitioner has specifically forfeited, waived, rejected, declined, and refused to voluntarily accept any and all benefits, especially admiralty and limited debt liability benefits, from the 'United States' and its instrumentalities." Apparently on those bases, the motion then states: "Petitioner hereby gives formal notice to the Court of Petitioner's status as a nonjuristic person, a Texas state Citizen, and that, in such status, Petitioner squarely challenges and voids the jurisdiction of this Court." Petitioners claimed in the motion that we lack "in personam" jurisdiction and subject matter jurisdiction. We denied the motion.

Motion To Dismiss

On November 23, 2001, petitioners submitted a motion styled "Petitioner's Notice of Withdrawal of Petition", which we filed as a motion to dismiss (the motion to dismiss) and denied.[8] In that motion, petitioners reiterated their claim that we lack jurisdiction and stated that they wished to withdraw their

---

[8] To the extent petitioners were relying on grounds other than jurisdiction, a decision dismissing the proceedings would have been considered a decision sustaining the deficiencies determined by respondent. See sec. 7459(d). Since we did not believe that was the result petitioners intended, we denied the motion to dismiss.

petition: "Petitioner hereby gives Notice of <u>WITHDRAWAL</u> of the petition for review by the United States Tax Court. This Notice of Withdrawal of petition makes moot, voids, and cancels all proceedings previously scheduled by this Court for action upon the petition filed in error."

<u>Trial Session</u>

This case was set for trial at the Court's trial session commencing December 3, 2001, in Houston, Texas (the trial session).

On Friday, November 30, 2001, an employee of the Court Clerk's Office contacted Dr. Trowbridge and reminded him that petitioners were expected to appear on the following Monday at the call of the calendar at the trial session. When, on December 3, 2001, the case was called from the calendar, petitioners failed to appear. Counsel for respondent appeared and announced ready for trial. The Court set the case for trial on the following day (December 4).

When the case was recalled from the calendar for trial on December 4, 2001, petitioners failed to appear. Counsel for respondent appeared and announced ready for trial. The deputy trial clerk reported that he had left two messages for Dr. Trowbridge at his office regarding the date and time of the trial. Counsel for respondent orally moved for default judgment with respect to the initial deficiencies in tax determined

against Dr. Trowbridge, which we took under advisement pending respondent's filing of a (subsequently filed) written motion for default (the default motion).  Respondent proceeded to trial on the remaining amounts at issue (i.e., the additional 1996 deficiency and the additions to tax).[9]

OPINION

I.  <u>The Default Motion</u>

By the default motion, respondent moves that Dr. Trowbridge be held in default and that a decision be entered that there are deficiencies in tax with respect to him for 1996 and 1997 in the amounts of $146,847 (the initial 1996 deficiency) and $211,508 (the 1997 deficiency), respectively, and that a decision be entered that there are no deficiencies in tax with respect to Life Center and Life Choices.  Respondent moves in the alternative that Life Center be held in default and that a decision be entered that there are deficiencies in tax with respect to Life Center for 1996 and 1997 in the amounts of $23,195 and $476,918, respectively, and that Life Choices be held

_____

[9] Respondent bears the burden of proof (i.e., the ultimate burden of persuasion) with respect to the additional 1996 deficiency and the portions of the asserted additions to tax attributable thereto.  See Rule 142(a).  Respondent bears the burden of <u>production</u> (i.e., the burden of moving forward with evidence) with respect to the additions to tax asserted against Dr. Trowbridge in their entirety.  See current sec. 7491(c).  Since respondent decided to proceed to trial on those issues to satisfy his evidentiary burdens, we need not decide whether he was <u>required</u> to do so in this default setting.

in default and that a decision be entered that there is a deficiency in tax with respect to Life Choices for 1997 in the amount of $500,028.  Although the Court ordered petitioners to file a response to the default motion, Dr. Trowbridge returned to the Court a copy of that order with the following language handwritten thereon:  "Timely Notice of Non-Acceptance[.] The Petition was Withdrawn".

In pertinent part, Rule 123(a) provides:

(a) Default:  If any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, then such party may be held in default by the Court either on motion of another party or on the initiative of the Court.  Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper * * *

We have no doubt that petitioners had knowledge of the call of this case on December 3, 2001, and the recall of the case on the following day.  We assume that petitioners failed to answer those calls because they no longer wished to continue their case in this Court; that is the position they took in their motion to dismiss (which we previously denied).  We therefore grant the default motion and, in accordance with respondent's primary position therein, hold Dr. Trowbridge in default.[10]

---

[10]  As discussed above, we struck from the petition all assignments of error other than petitioners' limitations defense. Since respondent addresses petitioners' limitations defense (among other items) in his motion for partial summary judgment, the principal consequence of our holding Dr. Trowbridge in

(continued...)

## II.  Respondent's Motion for Partial Summary Judgment

Respondent has moved for partial summary judgment in his favor (the summary judgment motion) with respect to petitioners' limitations defense, the existence and amount of the additional 1996 deficiency,[11] and the additions to tax asserted against Dr. Trowbridge.[12]  Summary judgment is a device used to expedite litigation and is intended to avoid unnecessary and expensive trials of "phantom factual questions."  Espinoza v. Commissioner, 78 T.C. 412, 416 (1982).  Since there was a trial in this case, at which respondent presented evidence pertaining to the issues addressed in the summary judgment motion, we need not determine whether summary adjudication is appropriate here.  We shall, therefore, deny the summary judgment motion (although we largely

---

[10](...continued)
default is the ratification of respondent's primary position that Dr. Trowbridge, rather than Life Center and Life Choices, is liable for any deficiencies in tax and additions to tax determined in the notice of deficiency.

[11]  In his amendment to answer, respondent alleges an additional 1996 deficiency of $244,935, based on gross business receipts of $1,649,376 for that year.  In his posttrial brief, respondent asserts that Dr. Trowbridge had gross business receipts of $1,632,423 in 1996, thus necessitating a Rule 155 computation with respect to the additional 1996 deficiency.

[12]  Respondent moved in the alternative for partial summary judgment against Life Center and Life Choices in the event we deny his request for default judgment against Dr. Trowbridge. Our disposition of the default motion renders that alternative position moot.

sustain respondent's substantive positions therein, as discussed below).

III.  Statute of Limitations

As a general matter, income tax (and related penalties and additions to tax) must be assessed within 3 years after the later of (1) the due date (without regard to extensions) of the corresponding return, or (2) the date on which such return is filed.[13]  Secs. 6501(a) and (b)(1), 6665(a)(2); sec. 301.6501(b)-1(a), Proced. & Admin. Regs.  However, if the taxpayer fails to file a return, the Commissioner may assess such amounts at any time.  Sec. 6501(c)(3).

As relevant to petitioners' limitations defense, respondent contends that Dr. Trowbridge's initial 1996 Form 1040 does not constitute a valid return.  In Williams v. Commissioner, 114 T.C. 136, 143 (2000), we held that a disclaimer statement similar to the ones at issue in this case rendered the Form 1040 to which it was attached invalid.  We have also held that altering the Form 1040 jurat can destroy that form's validity as a return.  E.g., Jenkins v. Commissioner, T.C. Memo. 1989-617.  We shall not depart from the reasoning of those cases here.  Accordingly, we conclude that Dr. Trowbridge's initial 1996 Form 1040 is not a

---

[13]  For these purposes, the date on which a return is mailed is treated as the filing date if the postmark date falls within the prescribed period (including extensions) for filing the return.  Sec. 7502(a)(1) and (a)(2)(A)(i).

valid return.  It follows that respondent is not barred by the statute of limitations on assessment with respect to Dr. Trowbridge's 1996 taxable year.[14]  See, e.g., <u>Jarvis v. Commissioner</u>, 78 T.C. 646, 655 (1982).

IV.  <u>Additional 1996 Deficiency</u>

In the notice of deficiency, respondent determined that the medical practice generated gross receipts of $1,062,676 in 1996. Respondent based that determination on an analysis of the deposit activity with respect to the two bank accounts styled "John Parks Trowbridge MD" and the Life Center bank account (collectively, the medical practice bank accounts).  Respondent subsequently received daily cash analysis reports and daily practice summaries with respect to the medical practice for 1996 as the result of the enforcement of a summons issued to Dr. Trowbridge.  Those reports, introduced into evidence at trial, show that the medical practice generated gross receipts of $1,632,140 in 1996.[15]

---

[14]  Even if the revised 1996 Form 1040 that Dr. Trowbridge submitted in January 2000 constitutes a valid return (an issue respondent does not explicitly address and we do not decide), respondent issued the notice of deficiency on Oct. 20, 2000, well within the 3-year period of limitations on assessment for 1996 that would have commenced on the date of such filing.  See secs. 6503(a), 6213(a) (issuance of a valid notice of deficiency suspends the running of the period of limitations on assessment during the pendency of any ensuing proceedings originating in this Court).

[15]  We have adjusted respondent's computation of 1996 medical practice gross receipts ($1,632,423) downward by $283 to reflect a patient refund recorded on the cash analysis report for

(continued...)

Respondent bolstered his documentary evidence with witness testimony. Kathryn Hill, a former employee of Dr. Trowbridge's, testified that she had prepared the practice summaries each day as part of her duties and that she had derived the month-to-date and year-to-date collections listed thereon from the daily cash analysis reports prepared by other personnel. Ms. Hill further testified that, as sometimes reflected in her handwritten notations on the daily cash analysis reports, she had transferred cash receipts directly to Dr. Trowbridge and had used patients' checks to pay third party creditors of the medical practice whenever Dr. Trowbridge so requested, rather than depositing such amounts in any of the medical practice bank accounts. Ms. Hill's testimony is consistent with that of William Williams, an IRS agent who testified that, in his review of the medical practice bank account statements, he had been unable to find deposits corresponding to numerous checks and cash receipts recorded in the daily cash analysis reports.

Dr. Trowbridge's own daily records establish the gross receipts of the medical practice in 1996, and the testimony of Ms. Hill and Mr. Williams satisfactorily explains the large discrepancy between that amount and the aggregate bank deposits on which respondent based the initial 1996 deficiency.

---

[15](...continued)
Oct. 28, 1996, that we believe respondent overlooked.

Accordingly, we find that there is an additional deficiency in tax with respect to Dr. Trowbridge for 1996 based on gross business receipts of $1,632,140 for that year.

V. Additions to Tax

A. Statutory Provisions

1. Section 6651(a)(1)

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The amount of the addition is equal to 5 percent of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25 percent for returns more than 4 months delinquent. For these purposes, the amount required to be shown as tax on the return is reduced by any timely payments of the tax[16] and any credits which may be claimed on the return. Sec. 6651(b)(1).

2. Section 6654

Section 6654 provides for an addition to tax (in the form of an interest charge) in the event of an underpayment of a required installment of individual estimated tax. As relevant to this

---

[16] In general, payment of income tax is due on the due date of the corresponding return, determined without regard to any filing extensions. Sec. 6151(a).

case, each required installment of estimated tax is equal to 25 percent of the "required annual payment", which in turn is equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.  Sec. 6654(d)(1)(B)(i) and (ii).  The due dates of the required installments for a calendar taxable year are April 15, June 15, and September 15 of that year and January 15 of the following year.  Sec. 6654(c)(2).  For purposes of section 6654, an individual's tax consists of income tax and self-employment tax and is determined before the application of any wage withholding credit[17] (but after the application of other allowable credits). Sec. 6654(f); see sec. 31.

There are two mechanical exceptions to the applicability of the section 6654 addition to tax.  First, as relevant to this case, the addition is not applicable if the tax shown on the individual's return for the year in question (or, if no return is filed, the individual's tax for that year), reduced for these purposes by any allowable credit for wage withholding, is less

_____

[17] Under sec. 6654(g)(1), wage withholding credits are treated as payments of estimated tax.

than $500.[18]  Sec. 6654(e)(1).  Second, the addition is not applicable if the individual's tax for the preceding taxable year was zero.  Sec. 6654(e)(2).

B.  Discussion

1.  Respondent's Section 6651(a)(1) Determinations

We have already concluded, in the context of petitioners' limitations defense, that the disclaimer statement attached to, and the alteration of the jurat of, Dr. Trowbridge's initial 1996 Form 1040 rendered that Form 1040 invalid.  Since Dr. Trowbridge attached a substantially identical disclaimer statement to, and similarly altered the jurat of, his initial 1997 Form 1040, we conclude as well that Dr. Trowbridge's initial 1997 Form 1040 is not a valid return.

In addition to introducing at trial Dr. Trowbridge's (invalid) initial 1996 and 1997 Forms 1040, respondent produced evidence that Dr. Trowbridge did not submit to the IRS any other document purporting to be a return for 1996 or 1997 until January 2000.  Respondent therefore produced evidence that Dr. Trowbridge did not timely file Federal income tax returns for 1996 and 1997 and that each such failure continued for more than 4 months.  In the absence of any conflicting or exculpatory evidence (e.g., evidence of reasonable cause or lack of willful neglect on the

---

[18]  Effective for taxable years beginning after Dec. 31, 1997, the threshold amount is $1,000.  Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1202(a), 111 Stat. 994.

part of Dr. Trowbridge), we conclude that Dr. Trowbridge is liable for 25-percent additions to tax under section 6651(a)(1) with respect to his 1996 and 1997 taxable years.[19]

Respondent also produced evidence that Dr. Trowbridge did not make any timely payments in respect of his 1996 and 1997 income taxes and did not claim any tax credits for those years. Accordingly, the 25-percent additions to tax for which Dr. Trowbridge is liable under section 6651(a)(1) apply to the full amount of tax required to be shown on his respective 1996 and 1997 returns.[20] See sec. 6651(b)(1).

### 2. Respondent's Section 6654 Determinations[21]

In addition to introducing at trial Dr. Trowbridge's (invalid) initial 1996 and 1997 Forms 1040, respondent submitted

---

[19] We note that, in computing the amount of the 1997 addition to tax, respondent incorrectly applied a rate of 22.5 percent rather than 25 percent. See supra note 1.

[20] The amount of tax required to be shown on Dr. Trowbridge's 1996 return is equal to the initial 1996 deficiency ($146,847) plus the additional 1996 deficiency, the latter amount to be determined under Rule 155 in accordance with part IV of this report. The amount of tax required to be shown on Dr. Trowbridge's 1997 return is equal to the 1997 deficiency ($211,508).

[21] Respondent applied the provisions of sec. 6654 without regard to the amounts shown as tax on the revised 1996 and 1997 Forms 1040 attached by Dr. Trowbridge to the 1996 and 1997 Forms 1040X submitted by him to the IRS in January 2000. Petitioners did not assign error to that aspect of respondent's determinations. We shall not, therefore, decide whether the revised 1996 and 1997 Forms 1040 are valid returns or otherwise take them into account for purposes of determining the application of sec. 6654.

with the summary judgment motion Dr. Trowbridge's (invalid) 1995 Form 1040, authenticated by affidavit of respondent's counsel.[22] Respondent also produced evidence that Dr. Trowbridge did not make any timely payments (actual or deemed, see supra note 17) in respect of his 1996 or 1997 income taxes that could be applied against his required annual payments.

Given the foregoing evidence regarding invalid returns, the general applicability of the estimated tax provisions to Dr. Trowbridge's respective 1996 and 1997 taxable years depends on whether Dr. Trowbridge's actual (rather than reported) tax for those years is greater than zero. See sec. 6654(d)(1)(B). Similarly, the availability of the $500 de minimis exception with respect to either such year is determined by reference to Dr. Trowbridge's actual (rather than reported) tax for each such year (less any allowable wage withholding credit). See sec. 6654(e)(1). As relevant to the application of section 6654(d)(1)(B), our disposition herein of the default motion establishes that Dr. Trowbridge's tax for each of 1996 and 1997 is indeed greater than zero. As relevant to the application of section 6654(e)(1), such disposition establishes that

---

[22] As referenced in our findings of fact, Dr. Trowbridge's 1995 Form 1040 includes a disclaimer statement that is substantially identical to the disclaimers attached to his initial 1996 and 1997 Forms 1040. On that basis, we conclude that Dr. Trowbridge's 1995 Form 1040 is not a valid return. See Williams v. Commissioner, 114 T.C. 136, 143 (2000).

Dr. Trowbridge's tax (less allowable wage withholding credits) for each year far exceeds $500.

Our disposition of the default motion also precludes the applicability of the section 6654(e)(2) exception (zero tax for preceding year) with respect to Dr. Trowbridge's 1997 taxable year.  In that regard, although the record does not reveal Dr. Trowbridge's tax for 1995, we deem his 1995 Form 1040 (showing tax of $133,977 and no tax credits) to be evidence that such tax was greater than zero, which would render the section 6654(e)(2) exception inapplicable to his 1996 taxable year as well.

Based on the foregoing, and in the absence of any evidence to the contrary, we conclude that Dr. Trowbridge was subject to estimated tax with respect to each of his 1996 and 1997 taxable years and that he made no timely payments in respect of such liability.  Thus, the amount of Dr. Trowbridge's underpayment with respect to each installment of his required annual payments for those years is equal to the full amount of such installment.[23]

VI.  <u>Section 6673 Penalty</u>

In pertinent part, section 6673(a)(1) provides:

SEC. 6673.  SANCTIONS AND COSTS AWARDED BY COURTS.

(a) Tax Court Proceedings.--

---

[23]  In that regard, we accept respondent's computation of the 1997 addition to tax ($11,316), and we direct the parties to determine the amount of the 1996 addition to tax on the basis of Dr. Trowbridge's 1996 tax (more precisely, 90 percent thereof), determined in accordance with note 20, <u>supra</u>.

> (1) Procedures instituted primarily for delay, etc.--Whenever it appears to the Tax Court that--
>
> > (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,
> >
> > (B) the taxpayer's position in such proceeding is frivolous or groundless,
>
> or
>
> *   *   *   *   *   *   *
>
> the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

The purpose of section 6673 "is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate." Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); see also Grasselli v. Commissioner, T.C. Memo. 1994-581 (quoting Coleman). A taxpayer's position is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. E.g., Nis Family Trust v. Commissioner, 115 T.C. 523, 544 (2000). We need not find specific damages to invoke section 6673(a)(1); rather, that section is a penalty provision, intended to deter and penalize frivolous claims and positions in deficiency proceedings. Bagby v. Commissioner, 102 T.C. 596, 613-614 (1994).

Dr. Trowbridge does not here argue for any change in the law, and there is no plausible argument that, as maintained in

the disclaimers attached to his initial 1996 and 1997 Forms 1040, the payment of income taxes is voluntary. E.g., Woods v. Commissioner, 91 T.C. 88, 90 (1988). Whatever legitimate arguments may underlie his assignments of error, Dr. Trowbridge has emphasized frivolous arguments and, for that reason alone, deserves to have a section 6673(a)(1) penalty imposed against him.

We are also convinced by Dr. Trowbridge's conduct that he both instituted and maintained these proceedings for delay, which is a separate basis for imposing a section 6673(a)(1) penalty. We struck substantial portions of the petition. His discovery requests ran to hundreds of pages, and we granted respondent's motion for a protective order with respect thereto. Notwithstanding his active, indeed forceful, prosecution of this case initially, Dr. Trowbridge abruptly changed course 2 weeks before trial. At that point, he attempted to withdraw the petition, asserting a jurisdictional challenge premised on his disavowal of any commercial relationship with, and any enjoyment of benefits from, the United States. He refused to appear for trial, despite notice thereof. We interpret Dr. Trowbridge's actions in prosecuting (and not prosecuting) this case as evidence of his intent to delay these proceedings.

There is a contemporaneous case in this Court involving Dr. Trowbridge and his 1991-95 taxable years which involves conduct

similar to that involved here.  See <u>Trowbridge v. Commissioner</u>, T.C. Memo. 2003-164.  We conclude that Dr. Trowbridge deserves a large penalty under section 6673(a)(1).  Therefore, we shall impose on him a penalty of $25,000.

To reflect the foregoing,

<u>An appropriate order will be issued, and decision will be entered under Rule 155</u>.